**UNITED EGG PRODUCERS, et al., Plaintiffs,**

v.

**Alfonso DAVILA, et al., Defendants.**

**Civ. No. 92–1924(PG).**

United States District Court, D. Puerto Rico.

Dec. 14, 1994.

---

**2.** *See also* Opposition to Motion to Dismiss (docket No. 22).

Philip C. Olsson, David L. Durkin, Olsson, Frank & Weeda, Washington, DC, Enrique M. Bray, Nachman, Santiago, Bray, Guillemard & Carrion, Santurce, PR, for plaintiffs.

Daniel F. Lopez–Romo, Hato Rey, PR, Colleen B. Grzeskowiak, U.S. Dept. of Justice, Civil Div., Washington, DC, Salvador Tio–Fernandez, Maria Hortensia Rios–Gandara, U.S. Attorney's Office Dist. of P.R., Civil Div., Hato Rey, PR, Mayra Maldonado–Colon, Dept. of Justice, Federal Litigation Div., San Juan, PR, for defendants.

### *OPINION AND ORDER*

PEREZ–GIMENEZ, District Judge.

### *I.*

### *Introduction*

Pursuant to Market Regulation 3 ("MR3"), the Puerto Rico Department of Agriculture has imposed requirements relating to the

sale of chicken eggs. Plaintiffs seek to avoid complying with the requirements imposed by MR3. Plaintiffs challenge MR3 on several grounds. First, plaintiffs argue that the following provisions of MR3 are preempted by the federal Egg Products Inspection Act ("EPIA"), 21 U.S.C. § 1031 *et seq.;* by the federal Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.;* and by regulations promulgated thereunder, including 7 C.F.R. Parts 55–59 and 21 C.F.R. Part 100 *et seq.:* XIII(A)(2), XIII(G), XIII(B)(4), XV, II(17), X(B), VIII(E), XIII(D), X(F), VI(G), and XIII(A)(5). Plaintiffs also argue that MR3 unconstitutionally burdens interstate commerce, in violation of Article I, Section 8, clause 3, of the United States Constitution. Plaintiffs seek a declaratory judgment and injunctive relief.

The parties presented argument and evidence at a hearing on May 20, 1994. Both parties submitted post-hearing briefs. In addition, the United States Department of Agriculture submitted an *amicus curiae* brief. The issues involved in this litigation have been well-briefed and well-argued by both parties and by the U.S.D.A. as *amicus curiae.* In the final analysis, however, for the reasons set forth below, plaintiffs' request that the Department of Agriculture be enjoined permanently from enforcing Market Regulation 3 is **GRANTED.**

## II.

### Discussion

#### A.

##### Preemption

■ The laws of the United States are "the supreme Law of the Land; ... any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." United States Constitution, Article VI, cl. 2. Plaintiffs and the U.S.D.A. contend that Congress explicitly stated in the E.P.I.A. its intent to preempt state law. *See Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 95–98, 103 S.Ct. 2890, 2899–01, 77 L.Ed.2d 490 (1983). Any state law or regulation that conflicts

with federal law is "without effect." *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576 (1981).

### 1.

#### Egg Products Inspection Act

The Egg Products Inspection Act and regulations promulgated thereunder set forth standards for the quality, condition, weight, quantity, and grade of eggs produced for commercial sale. 21 U.S.C. § 1031 *et seq.* The E.P.I.A. explicitly preempts state and local law and regulations in three contexts. 21 U.S.C. § 1052(b). First, Congress forbade enforcement of state and local law and regulations that would impose "standards of *quality, condition, weight, quantity, or grade* which are in addition to or different from" the E.P.I.A. and federal regulations. In addition, the E.P.I.A. preempts the imposition of *temperature* requirements other than those set forth by the E.P.I.A. and implementing regulations. Finally, the E.P.I.A. also prohibits the imposition of *"labeling, packaging, or ingredient* requirements, in addition to or different from" those set forth in the E.P.I.A. and other federal statutes and regulations.[1] 21 U.S.C. § 1052(b).

### 2.

#### Market Regulation 3

■ MR3 § XIII(A)(2) imposes labeling requirements with respect to the name and address of the "importer or ... the representative or agent of the exporter." These requirements are in addition to those imposed by the E.P.I.A. This section therefore is preempted by the E.P.I.A.

MR3 §§ X(D), XIII(A)(5), XIII(B)(4), and XIII(G) impose a forty-two day marketing requirement on eggs sold in Puerto Rico. These provisions of MR3 relate to the quality, condition, and labeling of eggs, and are in addition to those imposed by the E.P.I.A. These sections therefore are preempted by the E.P.I.A.

---

**1.** Because Puerto Rico is in a "noncontiguous" area of the United States, the Commonwealth

may require labeling to show the State or other geographic area of "production or origin."

MR3 §§ XV and II(17) establish standards for "fresh" eggs. Compliance with these standards is voluntary. Subsequent to adoption by a marketer, however, compliance with additional requirements is mandatory. The E.P.I.A. and implementing regulations do not contain an explicit definition of "freshness," but impose standards for the quality of eggs based on several factors which relate to freshness, including shell condition, air cell depth, firmness of the egg white, and yolk definition and freedom from defect. 7 C.F.R. Part 56, Subpart C. The provisions of MR3 relating to "freshness," therefore, are different from and in addition to the standards imposed by the E.P.I.A. and federal regulations. These sections of MR3 are preempted.

MR3 §§ VIII(E) and X(B) prohibit "the marketing [to consumers] in Puerto Rico of eggs of a weight class inferior to 'Small.'" The E.P.I.A. does not prohibit on the basis of weight the marketing or sale to consumers of eggs. These provisions of MR3 impose requirements in addition to those contained in the E.P.I.A. These sections of MR3 are preempted.

MR3 § XIII(D) prohibits use for direct sale to consumers of any egg container not approved by the Puerto Rico Secretary of Agriculture. The E.P.I.A. and implementing regulations impose requirements relating to the packaging and containers used in the sale of eggs to consumers. 7 C.F.R. § 56.35. This provision of MR3 imposes a requirement in addition to those imposed by federal law. Therefore, this section of MR3 is preempted.

### B.

### Commerce Clause

Under Article I, section 8, clause 3, of the United States Constitution, the United States Congress is granted power to "regulate Commerce with foreign nations and among the several States." The Supreme Court has held that the so-called "dormant Commerce Clause" prohibits the states from enforcing laws or regulations that "unduly burden or discriminate against interstate or foreign commerce." *Trailer Marine Trans-*

*port Corp. v. Rivera Vazquez,* 977 F.2d 1, 8 (1st Cir.1992) (citing *City of Philadelphia v. New Jersey,* 437 U.S. 617, 623–24, 98 S.Ct. 2531, 2535–36, 57 L.Ed.2d 475 (1978)). A state statute may discriminate against interstate commerce if the discrimination is "demonstrably justified by a valid factor unrelated to economic protectionism." *New Energy Co. of Indiana v. Limbach,* 486 U.S. 269, 274, 108 S.Ct. 1803, 1808, 100 L.Ed.2d 302 (1988).

MR3 § X(F) requires that eggs imported to Puerto Rico from one of the United States must be marked with the postal code of the state of origin. Eggs imported from a foreign country must be marked with the word "imported." Eggs produced in Puerto Rico need not be marked.

Defendants correctly argue that the E.P.I.A. expressly authorizes "noncontiguous area[s]," such as Puerto Rico, to "require labeling to show the State or other geographic area of production of origin." 21 U.S.C. § 1052(b)(3). Defendants assert that imposing a labeling requirement on imported eggs will permit local authorities to isolate and remove from supermarkets' shelves eggs produced in a geographic area known to be the source of an outbreak of salmonella poisoning. In its present form, however, MR3 § X(F) unconstitutionally burdens interstate commerce.

Although the E.P.I.A. permits noncontiguous areas to impose a labeling requirement, the statute does not permit such a requirement to be imposed in a manner that discriminatorily burdens interstate commerce. Moreover, defendants' assertion that the intent of § X(F) is the protection of consumers' health is belied by the fact that the regulation permits eggs produced in Puerto Rico to be sold without a denotation of the area of origin. There is no evidence in the record demonstrating that eggs imported to Puerto Rico are more likely to be the source of salmonella than eggs produced locally. Therefore, it appears to be no more imperative that the Government be able to identify imported eggs than eggs produced in Puerto Rico. In theory, of course, the Government could identify all unmarked eggs as locally-produced. Defendants have not suggested that this would be a reliable system or that

**110**

this was their intent. To the contrary, it appears that defendants wish only to be able to identify—and to permit local consumers to identify—eggs produced outside of Puerto Rico.

Thus, this section of MR3 substantially burdens interstate commerce by discriminating between eggs produced in Puerto Rico and eggs produced elsewhere. Evidence adduced at the hearing demonstrated that if enforced, § X(F) would impose on mainland and foreign egg producers significant costs not imposed on Puerto Rican producers. Defendants did not offer evidence proving that the discriminatory burden of § X(F) is justified by any factor "unrelated to economic protectionism." *New Energy Co. of Indiana, supra.*

 According to MR3 § VI, *"every lot of eggs to be marketed in Puerto Rico* shall be submitted for inspection...." (emphasis added) Although facially nondiscriminatory, plaintiffs argue that this provision of MR3 in practice is enforced only against eggs imported to Puerto Rico. As evidence of the regulation's discriminatory intent and impact, plaintiffs point to MR3 § VI(G), which prevents removal of any lot of eggs from a port, airport, or "place of unloading" without the government's authorization. Because only imported eggs will arrive at the locations mentioned in § VI(G), plaintiffs argue that § VI(G) and the other sections of § VI relating to inspections are enforceable only against imported eggs. Plaintiffs have not, however, carried their burden of proof with respect to demonstrating that this section of the regulation is enforced in a discriminatory manner. Section § VI(G) imposes minimal restrictions on the movement of eggs that are rationally related to the goal of § VI, namely the pre-sale inspection of eggs. Plaintiffs did not introduce persuasive evidence that the Government has failed to implement a similar mechanism to ensure that locally-produced eggs also are inspected prior to sale.

### III.

#### Conclusion

The following sections of MR3 are preempted by the E.P.I.A.: §§ XII(A)(2), XIII(G), XIII(B)(4), XV, II(17), X(B), VIII(E), XIII(D), XIII(A)(5), and X(D). The following section of MR3 imposes an unconstitutional burden on interstate commerce: § X(F).

**THEREFORE,** plaintiff's request for a permanent injunction against enforcement of the sections of Market Regulation 3 listed in the preceding paragraph is **GRANTED.** These sections of Market Regulation 3 may not be enforced.

**IT IS SO ORDERED.**