**STARLIGHT SUGAR INC., Pan American Grain Manufacturing, Inc., Plaintiffs,**

v.

**Neftali SOTO, Individually and as Secretary of the Department of Agriculture for the Commonwealth of Puerto Rico, Defendant.**

No. 95–2078 (PG).

United States District Court, D. Puerto Rico.

Feb. 14, 2000.

24

Antonio Moreda–Toledo, Moreda & Moreda, San Juan, PR, Marcos A. Ramirez–Lavandero, San Juan, PR, for Starlight Sugar, Inc., Pan American Grain Co., Inc., plaintiffs.

Eric A. Tulla, Rivera, Tulla & Ferrer, Hato Rey, PR, for Sugar Corporation of Puerto Rico ("La Corporacion Azucarera De Puerto Rico"), defendant.

John F. Nevares, Smith & Nevares, San Juan, PR, for Manuel Diaz–Saldana, defendant.

## OPINION & ORDER

PEREZ–GIMENEZ, District Judge.

Pending before this Court are Plaintiffs', Starlight Sugar, Inc. and Pan American Grain Manufacturing, Inc., Motion for Summary Judgment (Dkt.121) and Defendant Neftalí Soto's Opposition to Plaintiffs' Motion for Summary and Defendant Soto's Motion for Summary Judgment (Dkt.128). Plaintiffs have alleged Market Regulation No. 13 is unconstitutional under the Interstate Commerce Clause and the Equal Protection Clause of the United States Constitution, and that Defendant Soto is liable to Plaintiffs for his deliberate and willful violation of Plaintiffs' federal constitutional rights as provided for in 42 U.S.C. § 1983. Plaintiffs request injunctive relief and damages.

The Court has previously intimated strongly twice before that Market Regulation No. 13 is unconstitutional, a conclusion affirmed by the First Circuit Court of Appeals. *See Garcia v. Bauza Salas*, 686 F.Supp. 965 (D.P.R.1988) (Pérez–Giménez, J.), *vacated and rev'd on other grounds*, 862 F.2d 905 (1st Cir.1988); *Starlight Sugar, Inc. v. Soto*, 909 F.Supp. 853 (D.P.R. 1995) (Pérez–Giménez, J.), *aff'd*, 114 F.3d 330 (1st Cir.1997) ("*Soto I* " & "*Soto II* ").

## SUMMARY JUDGMENT STANDARD

Summary judgment is "a means of avoiding full-dress trials in unwinnable cases, thereby freeing courts to utilize scarce judicial resources in more beneficial ways." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991), *cert. denied*, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). In essence, summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R. CIV.P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Therefore, the trial court must go beyond the facade of the pleadings, and "assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992), *cert. denied*, 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993). Throughout the court's analysis, "the entire record [must be seen] in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). *See also Mullin v. Raytheon Co.*, 164 F.3d 696, 698 (1st Cir.1999), *reh'g denied by* 171 F.3d 710 (1st Cir.1999), *cert. denied* —— U.S. ——, 120 S.Ct. 44, 145 L.Ed.2d 40 (1999); *Maldonado–Denis v. Castillo–Rodríguez*, 23 F.3d 576, 581 (1st Cir.1994).

In order to prevail on a motion for summary judgment, the moving party first must make a preliminary showing that there is no genuine issue of material fact which requires resolution at trial. *See Cadle Co. v. Hayes*, 116 F.3d 957, 960 (1st Cir.1997). Once the moving party has properly supported it's motion, "the burden shifts to the nonmovant to demonstrate, through specific facts, that a trial worthy issue remains." *Id. See also Borschow Hosp. & Med. Supplies, Inc. v. Cesar Castillo, Inc.*, 96 F.3d 10, 14 (1st Cir. 1996). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "There must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.' " *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir.1990) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249–50, 106 S.Ct. 2505).

## A NOT SO SACCHARINE HISTORY

Plaintiffs are in the business of importing, packing, distributing and selling refined sugar for consumer use or consumption in the Commonwealth of Puerto Rico. At all times relevant to this case, Defendant Neftalí Soto was the Secretary of Agriculture and Chairman of the Board of the Sugar Corporation.[1] In 1994, Soto acknowledged that there would be a shortage of refined sugar in Puerto Rico, caused by the shrinkage of the Puerto Rico sugar industry. The announcement was less than surprising; the shrinkage of the sugar industry has been continuous since the late 1950s. In response to the continuing decline, the Board of Directors of the Sugar Corporation authorized the corporation to hold biddings for the importation of packed sugar to satisfy the needs of the local consumers.

Plaintiffs wished to enter the consumer sugar market in Puerto Rico and commenced preparations to import and pack refined sugar in Puerto Rico, including the purchasing of equipment for packing facilities. Subsequently, Plaintiffs brought refined sugar in bulk to Puerto Rico, where they packed it in small bags for direct sale to consumers. The Department of Agriculture never authorized Plaintiffs to import consumer-type sugar into Puerto Rico.

The Department of Agriculture of Puerto Rico served Plaintiffs with a Detention Order on August 11, 1995. The Detention Order called for the detainment of 3,490 bales of refined sugar bagged for direct sale to consumers on the grounds that the sugar was designated for industrial use only and thus in violation of Market Regulation No. 13. The applicable section of Market Regulation No. 13 reads:

"Section No. VI–Containers

A. Refined sugar to be imported in Puerto Rico shall come in consumer size packages inside the corresponding shipping containers. For the purpose of this Regulation a consumer size package is that one whose net content does not exceed five (5) pounds.

B. Raw sugar, refined sugar for industrial use or sweepings to be imported for marketing and for processing in Puerto Rico, shall come in containers with a capacity up to two hundred (200) pounds only. *Imported refined sugar for industrial use shall not be repacked in consumer size packages.*

Following the detainment of the bales of sugar, Plaintiffs initiated an action in federal court seeking declaratory judgment, as well as injunctive and damage relief alleging that Market Regulation No. 13 is unconstitutional under the Commerce Clause of the United States Constitution,[2] and that the illegal enforcement of the Regulation caused Plaintiffs substantial economic damages.

Market Regulation No. 13 is not an absolute prohibition on the importation of consumer sugar since it can still be imported in pre-packed two (2) and five (5) pound bags. Also, raw sugar may be imported for refinement. However, the Sugar Corporation owned and operated the only sugar refinery in Puerto Rico. Economic reality precludes the construction of another

1. The Sugar Corporation is a public corporation but with a separate and distinct legal personality apart from the Government of Puerto Rico. The Sugar Corporation arranges the refinement and distribution of Puerto Rico-produced sugar to the island's consumers.

2. Plaintiffs also alleged that Market Regulation No. 13 violates the Equal Protection Clause of the United States Constitution. Whereas the purpose of the dormant Commerce Clause is to protect "interstate commerce" from unconstitutional discrimination by the states, the purpose of the equal protection clause is to protect "persons" from unconstitutional discrimination by the states. Here, interstate commerce is at issue, which provides the basis for both the dormant commerce clause claim as well as the equal protection clause claim.

refinery and also prevents the importation of pre-packed consumer sugar. The Sugar Corporation seemingly maintains a monopoly in sugar refining and consumer sugar sales in Puerto Rico. "As the Acting Executive Director of the Sugar Corporation admitted, Regulation 13 effectively prohibits the importation of table sugar to the island. Tr. at 142 (Vélez Ramos Testimony)." *Soto I,* 909 F.Supp. at 856. Soto readily admits in his memorandum that "Article VI of Market Regulation No. 13 protects the market for locally grown and refined sugar in the Commonwealth of Puerto Rico. See Tr. at 274–75. The Sugar Corporation cannot compete with other countries that have less expensive manual labor, more fertile lands to be cultivated, better weather conditions, and no laws requiring minimum wages and other benefits for the employees." (Dkt.128) (Memorandum at 29) Soto goes on to allege that heightened protection is necessary in the sugar industry as opposed to other sectors, such as commerce and manufacturing. Soto concludes that without Market Regulation No. 13 the sugar industry in Puerto Rico will disappear. *Id.*

Despite the Department of Agriculture's best efforts, not to mention a great deal of money, Market Regulation No. 13 has not stopped the deterioration of the sugar industry in Puerto Rico; the number of persons employed in the industry and the amount of land devoted to sugar production has declined significantly. *See U.S. v. Smith,,* 686 F.Supp. at 855 n. 2; *Tr.* at 162–66 (Vélez Ramos Testimony).

## MORE SWEET TALK

### I. PUERTO RICO SUGAR AND THE UNITED STATES CONSTITUTION

#### A. COMMERCE CLAUSE DISCUSSION

The Department of Agriculture is no stranger to constitutional challenges to their regulations. This Court has previously concluded that this precise section of Market Regulation No. 13 is unconstitutional, a finding upheld on appeal. *See Garcia v. Bauza Salas,* 686 F.Supp. at 973–74; *Soto I,* 909 F.Supp. at 861; *Starlight Sugar, Inc. v. Soto,* 114 F.3d at 331–32 ("*Soto II* "). Department of Agriculture regulations concerning both pigeon peas and eggs have also been determined to violate the dormant Commerce Clause. *See Goya De Puerto Rico Inc. v. Santiago,* 59 F.Supp.2d 274, 276–78 (D.P.R.1999) (Cerezo, J.) (holding several Department of Agriculture sections within a regulation regulating, among other things, pigeon peas, unconstitutional under the Dormant Commerce Clause); *United Egg Producers v. Department of Agriculture,* 77 F.3d 567, 571–72 (1st Cir.1996), *aff'g,* 871 F.Supp. 106 (D.P.R.1994) (Pérez–Giménez, J.) (holding Market Regulation No. 3 § X(F) unconstitutional under the Dormant Commerce Clause). *See also United Egg Producers, et al. v. Davila, et al.,* No. 92–1924 (D.P.R. Feb.4, 2000) (mooting constitutional challenge when Department of Agriculture changed regulation to comply with constitutional requirements). Suffice to say, the Court has not suddenly changed its mind: Section Six of Market Regulation No. 13 remains unconstitutional.[3]

### B. EQUAL PROTECTION CLAUSE

■ Plaintiffs have also alleged that Market Regulation No. 13 violates the Equal Protection Clause of the United States Constitution. Generally, "courts will uphold economic and social legislation that distinguishes between two similarly situated groups as long as the classification is rationally related to a legitimate government objective." *Fireside Nissan, Inc. v. Fanning,* 30 F.3d 206, 219 (1st Cir.1994) (citing *Nordlinger v. Hahn,* 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992);

---

3. See the Court's previous opinion, 909 F.Supp. 853, and the First Circuit affirmation of that opinion, 114 F.3d 330.

*Schweiker v. Wilson,* 450 U.S. 221, 230, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981); *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *LCM Enterprises, Inc. v. Town of Dartmouth,* 14 F.3d 675, 678–79 (1st Cir.1994)). Defendant contends that Market Regulation No. 13 has five (5) legitimate objectives, all are strikingly similar to Defendant's justifications under the Commerce Clause portion of this suit: (1) to sponsor the Department of Agriculture's "public policy of land banks"[4]; (2) to sponsor the Sugar Corporation; (3) to contribute to the local economy[5]; (4) to maintain 13,000 jobs of unskilled labor[6]; and (5) to make sure that the sugar sold directly to consumers meets minimum quality requirements.[7] These so-called objectives are no more than excuses for economic protectionism.

Equal protection restraints are applicable even though the effect of the discrimination in this case is similar to the type of burden with which the Commerce Clause also would be concerned. We reaffirmed the importance of the Equal Protection Clause in the insurance context in *Western & Southern* and see no reason now for reassessing that view.

In whatever light the State's position is cast, acceptance of its contention that promotion of domestic industry is always a legitimate state purpose under equal protection analysis would eviscerate the Equal Protection Clause in this context. A State's natural inclination frequently would be to prefer domestic business

over foreign. . . . We hold that under the circumstances of this case, promotion of domestic business by discriminating against nonresident competitors is not a legitimate state purpose.

*Metropolitan Life Ins. Co. v. Ward,* 470 U.S. 869, 881–82, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1985). Market Regulation No. 13 violates the Equal Protection Clause of the United States Constitution.

## II SECTION 1983 CLAIM–HOW SWEET IS IT

More is needed in order to recover under 42 U.S.C. § 1983 than the reaffirmation that Market Regulation No. 13 is unconstitutional. Plaintiffs must allege and prove that (1) Defendant's conduct occurred under the color of state law and (2) the conduct deprived Plaintiffs of a right, privilege or immunity secured to them federal law or the United States Constitution. The Supreme Court has adopted a broad construction of § 1983 in order to "provide a remedy . . . against all forms of official violation of federally protected rights." *Monell v. Dept. of Soc. Servs. of City of New York,* 436 U.S. 658, 700–01, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *See also Dennis v. Higgins,* 498 U.S. 439, 443–45, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991). The Commerce Clause has been held to provide a § 1983 cause of action. *See, e.g., Dennis v. Higgins,* 498 U.S. at 451, 111 S.Ct. 865.

### A. INJUNCTIVE RELIEF

State officials sued in their official capacities for damages or other retroactive

**4.** See Defendant's Motion for Summary Judgment (Dkt.128) The Court understands Defendant's use of the term "land bank" to mean the Department's policy of setting aside future use of land for certain purposes.

**5.** If the Department of Agriculture truly wants to "sponsor" the Sugar Corporation and contribute to the local economy, economic protectionism is above and beyond that goal. The simple influx of capital satisfies both these objectives.

**6.** It has been suggested that perhaps the Department can re-route some of that money for

providing education to the 13,000 unskilled laborers instead of sinking more money into the declining Sugar industry. *See Garcia v. Bauza Salas,* 686 F.Supp. at 974–77.

**7.** It seems that the Puerto Rico Department of Health, not the Department of Agriculture, is the agency entrusted with overseeing this type of concern. It is the Department of Health, not the Department of Agriculture that inspects the sugar and issues licenses for the importation of sugar. Quality of sugar and Market Regulation No. 13 are inapposite terms. *See Soto I,* 909 F.Supp. at 860.

relief are not "persons" for purposes of § 1983. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 70, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). However, a suit against a state official in their official capacity for injunctive or prospective relief is permitted. In affirming this Court's previous decision granting Plaintiffs injunctive relief, the First Circuit wrote:

> Commerce Clause case law strongly supports the position of plaintiff sugar importers. The Department of Agriculture asks that the dormant Commerce Clause put forward in *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, [90 S.Ct. 844, 25 L.Ed.2d 174] (1970), be applied to Section Six [of Market Regulation No. 13], and it seems to acknowledge that for *Pike* to apply, it must characterize Section Six as an even handed regulation that imposes only an incidental burden on interstate commerce. Section Six is plainly not such a creature. As the district court properly found, where a state law or regulation, such as Section Six, facially discriminates against interstate commerce, and has as its very purpose the protection of local economic interests, it must withstand the most stringent form of scrutiny under the Commerce Clause. *See, e.g., West Lynn Creamery v. Healy,* 512 U.S. 186, 114 S.Ct. 2205, 2211–13, 129 L.Ed.2d 157 (1994). Under such strict scrutiny, facially discriminatory regulations are presumptively invalid and are "routinely struck down," unless it can be shown that they serve a legitimate local interest "unrelated to economic protectionism"—an interest, furthermore, that cannot be served through non-discriminatory means. *New Energy Co. v. Limbach,* 486 U.S. 269, 274, 108 S.Ct. 1803, 100 L.Ed.2d 302 (1988); *see also Maine v. Taylor,* 477 U.S. 131, 138, 106 S.Ct. 2440, 91 L.Ed.2d 110 (1986) (upholding facially discriminatory import restriction as necessary to protect in-state wildlife). Here, appellants can only justify their restriction of bulk sugar importation and subsequent packaging for consumer sale by listing the various local benefits attendant to economic protectionism itself. "Where simple economic protectionism is effected by state legislation, a virtually per se rule of invalidity has been erected." *City of Philadelphia v. New Jersey,* 437 U.S. 617, 624, 98 S.Ct. 2531, 57 L.Ed.2d 475 (1978).

*Soto II,* 114 F.3d at 331–32. Defendant maintained the same arguments throughout this case and the Court sees no reason to change from its previous view. Therefore, the Court GRANTS Plaintiffs Motion for Summary Judgment as to injunctive relief claim against Defendant Soto in his official capacity.

## B. DAMAGES

█ Plaintiffs have also alleged a damage suit against Soto in his "personal" capacity. State officials sued in their personal capacities are subject to a suit for damages under § 1983. *See Hafer v. Melo,* 502 U.S. 21, 25–26, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). In order to establish a § 1983 claim against a state official acting in his personal capacity, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Hafer v. Melo,* 502 U.S. at 25, 112 S.Ct. 358 (quoting *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)).

█ Defendant has the burden of pleading qualified immunity. *See Gomez v. Toledo,* 446 U.S. 635, 641, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Harlow v. Fitzgerald,* 457 U.S. 800, 815 n. 24, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Once a defendant raises a qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant's actions violated a clearly established constitutional right. *See Guffey v. Wyatt,* 18 F.3d 869, 871 (10th Cir.1994). *See also Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). Although Defendant claims he is entitled to a qualified immunity under the Eleventh Amendment, the Eleventh Amendment does not bar awarding dam-

ages against state officials who are sued in their personal capacities under § 1983. *See Hafer v. Melo,* 502 U.S. at 25, 112 S.Ct. 358. Rather, Soto bases his claim for qualified immunity upon the objective standard stated in *Harlow v. Fitzgerald,* asserting that he is immune because at all times relevant he objectively acted reasonably. *See Hafer v. Melo,* 502 U.S. at 25, 112 S.Ct. 358.

■ *Harlow* establishes a two-part test for determining qualified immunity. First, the Court must decide if the law was clearly established at the time the action occurred. *See Harlow v. Fitzgerald,* 457 U.S. at 818, 102 S.Ct. 2727. If the first part of the test is satisfied, Defendant must demonstrate that (due to extraordinary circumstances) he did not know, nor reasonably should have known, of the relevant standards. Both parts are objective, though the second part is determined based upon the "objective reasonableness" of Defendant. The Court then inquires: would a reasonable official conclude that seizing Plaintiffs' sugar and discriminating against interstate commerce violates the dormant Commerce Clause?

"On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. . . . If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow v. Fitzgerald,* 457 U.S. at 818, 102 S.Ct. 2727. The grant or denial of qualified immunity is thus a question of law for the court. *Elder v. Holloway,* 510 U.S. 510, 515, 114 S.Ct. 1019, 127 L.Ed.2d 344 (1994).

■ The Court holds that the law was clearly established at the time the conduct occurred and that Soto knew or should have known that such conduct violated the Commerce Clause. Such a holding places a negligible burden on a state official. The Commerce Clause is a cornerstone of our economy and our country. It helps ensure that persons maintain their freedom to trade. The Court is hard pressed to believe that Soto, an attorney, would be unaware of the existence of the Commerce Clause. Indeed, a memorandum prepared for Soto questioned the constitutionality of Market Regulation No. 13 as early as 1993.[8] (Dkt. 121, exh. II of Statement of Material Uncontroverted Facts) Defendant is not entitled to either a blanket or qualified immunity under the facts of this case as Soto knew or should have known that Market Regulation No. 13 violates the dormant Commerce Clause.[9]

■ In order to be found to be acting under state law, a state official must have exercised power provided by state law and occurred only because of the authority given to the state official under his state law authority. *See United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941), *reh'g denied,* 314 U.S. 707, 62 S.Ct. 51, 86 L.Ed. 565 (1941). "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under the color of' state law." *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941). "The dispositive issue is whether the official was acting pursuant to the power he/she possessed by state authority or acting only as a private individual." *Edwards v. Wallace Community College,* 49 F.3d 1517, 1523 (11th Cir.1995). Here,

8. An opinion and order issued by this Court in 1988 also held Market Regulation No. 13 unconstitutional. *See García v. Bauza Salas,* 686 F.Supp. at 973–74. Market Regulation No. 13 is exactly what Defendant stated it is, a regulation that operates by design to exclude sugar produced outside of Puerto Rico to protect local producers.

9. A similar result is found when analyzing the Equal Protection Clause, and either constitutional right leads to the same conclusion— Soto knew or should have known that his actions would violate Plaintiffs' constitutional rights.

Soto unquestionably acted "under the color of [Puerto Rico] law."

"The [Supreme] Court has often described the Commerce Clause as conferring a 'right' to engage in interstate trade free from restrictive state regulation." *Dennis v. Higgins*, 498 U.S. at 448, 111 S.Ct. 865. Plaintiffs were not allowed to compete against the Sugar Corporation, due directly to "restrictive state regulation." Plaintiffs satisfied both elements of a § 1983 claim.

█ This is not to say that Plaintiffs can automatically recover damages. A purpose of § 1983 is to compensate plaintiffs who have been deprived of constitutionally guaranteed rights, when those deprivations cause "compensable injury." *See Carey v. Piphus*, 435 U.S. 247, 255, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). If Plaintiffs cannot prove actual injury, they can recover only nominal damages. *See Carey v. Piphus*, 435 U.S. at 266–67, 98 S.Ct. 1042. Plaintiffs should therefore be prepared to present specific evidence of damages, e.g., lost income, etc. 4 ROTUNDA & NOWAK, TREATISE ON CONSTITUTIONAL LAW– SUBSTANCE AND PROCEDURE § 19.33, at 129 (3d ed.1999).

## CONCLUSION

The Court is shocked by the lack of understanding on the part of Defendant. In what seems like a most basic component of this country, Defendant has failed to recognize its importance. If the sugar industry fails it is because it cannot compete. While unfortunate, this may be the reality that Defendant must face.

Defendant's memorandum reads more like a emotional plea than a legal argument. Defendant's cries fall on deaf ears. The Court refuses to turn its back on the free market system. Defendant has indeed made the Court's decision very easy, time and time again openly admitting that the purpose behind Market Regulation No. 13 is to *economically* protect the lone sugar producer in Puerto Rico. To make clear so Defendant once and for all understands that Market Regulation No. 13 is unconstitutional: A state, which includes Puerto Rico, cannot economically protect local industry without a valid non-economic justification. This is anti-competitive and violates the dormant Commerce Clause of the United States Constitution.

Wherefore, the Court GRANTS Plaintiffs' Motion for Summary Judgment, GRANTING Plaintiffs a permanent injunction barring the enforcement of Section Six of Market Regulation No. 13, and DENIES Defendant's Motion for Summary Judgment. Plaintiffs are hereby ordered to file a motion requesting damages, along with an accompanying brief on the issue of monetary damages in a § 1983 claim against an official in his personal capacity, no later than March 31, 2000. Defendant's response is due 15 days following Plaintiffs' filing.

**IT IS SO ORDERED.**