# United States Court of Appeals

## For the First Circuit

No. 00-1487

STARLIGHT SUGAR, INC., PAN AMERICAN GRAIN CO., INC.,

Plaintiffs, Appellees,

v.

NEFTALÍ SOTO, INDIVIDUALLY AND AS SECRETARY OF THE
DEPARTMENT OF AGRICULTURE OF THE
COMMONWEALTH OF PUERTO RICO,

Defendant, Appellant,

SUGAR CORPORATION OF PUERTO RICO ("LA CORPORACIÓN
AZUCARERA DE PUERTO RICO"), MANUEL DÍAZ SALDAÑA,
INDIVIDUALLY AND AS SECRETARY OF THE DEPARTMENT OF THE
TREASURY OF THE COMMONWEALTH OF PUERTO RICO.

————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

————————————

Before

Torruella, Chief Judge,

Lipez, Circuit Judge,

and García-Gregory,[*] District Judge.

————————————

Richard H. Fallon, Jr., with whom Juan A. López-Conway and García
& Fernández, were on brief, for appellant.
Eduardo A. Vera-Ramírez, with whom Ramírez Lavandero, Landrón &

————————————

[*]  Of the District of Puerto Rico, sitting by designation.

<u>Vera</u>, were on brief, for appellees.

———————————————

June 11, 2001

———————————————

**TORRUELLA, <u>Chief Judge</u>.** This is an appeal from an Opinion and Order denying appellant Neftalí Soto's qualified immunity defense. Soto, acting in his capacity as Secretary of the Department of Agriculture of the Commonwealth of Puerto Rico, has been sued in his personal capacity under 42 U.S.C. § 1983 for enforcing a sugar regulation that prevented appellees, Starlight Sugar, Inc. and Pan American Grain Company, Inc. ("Starlight/PanAm"), from importing sugar into Puerto Rico in bulk for packaging in consumer-sized units. We reverse the district court opinion and hold that Soto is entitled to qualified immunity.

## BACKGROUND

Section VI of Market Regulation No. 13 prohibits the importation of sugar into Puerto Rico for consumer use unless the sugar has been packaged in consumer-sized bags (two- and five-pound bag sizes) prior to its arrival in Puerto Rico.[1] In other words, sugar cannot be shipped to Puerto Rico in bulk for packaging in Puerto Rico. It is undisputed that the effect of this regulation is

---

[1] Puerto Rico Department of Agriculture Market Regulation No. 13, Sec. VI--Containers reads, in relevant part:

> A. Refined sugar to be imported in Puerto Rico shall come in consumer size packages inside the corresponding shipping containers. For the purposes of this Regulation a consumer size package is that one whose net content does not exceed five (5) pounds.
> B. . . . . Imported refined sugar for industrial use shall not be repacked in consumer-size packages.

to prevent sugar intended for consumer use from being brought into Puerto Rico.

An explanation of the history of the sugar industry in Puerto Rico is provided in the district court opinion granting Starlight/PanAm a preliminary injunction, Starlight Sugar, Inc. v. Soto, 909 F. Supp. 853, 855-56 (D.P.R. 1995) [hereinafter Starlight Sugar I], aff'd, 114 F.3d 330 (1st Cir. 1997) [hereinafter Starlight Sugar II], and need not be retold here. A summary of the litigation history of Market Regulation No. 13, however, is worth noting.

The prohibition on repackaging imported sugar was first challenged in the Puerto Rico court system in 1984. While the Puerto Rico Supreme Court was considering the issue, a concurrent suit was filed in federal district court in 1987. The district court stayed the proceedings pending a decision by the Puerto Rico Supreme Court. On November 30, 1987, the Puerto Rico Supreme Court rendered such a decision, upholding Regulation No. 13 against due process and equal protection claims based on the Puerto Rico Constitution. Puerto Rico Sugar Corp. v. García, CE-85-481, RE-85-496, P.R. Offic. Trans. Sugar repacker García returned to the federal district court seeking relief in that forum. The district court, after dismissing the claims brought under the Due Process and Equal Protection Clauses of the United States Constitution, held that a claim could be maintained under the Commerce Clause, because such a claim could not have been

-4-

litigated in the Puerto Rico courts.[2] García v. Bauzá Salas, 686 F. Supp. 965, 967 (D.P.R. 1988) ("under Puerto Rican law, as espoused by the Puerto Rico Supreme Court, the clause is inapplicable to the Island").  The district court went on to enjoin enforcement of the regulation.  Id. at 974.  On appeal, this Court vacated the injunction, holding that the district court's action violated the Anti-Injunction Act, 28 U.S.C. § 2283, because the order enjoining enforcement of Regulation No. 13 directly conflicted with the injunction affirmed by the Puerto Rico Supreme Court barring García from repackaging sugar in Puerto Rico.  García v. Bauzá Salas, 862 F.2d 905, 907-08 (1st Cir. 1988).

In 1994, appellee Pan American Grain imported approximately 80,000 pounds of sugar into Puerto Rico for consumer repackaging by appellee Starlight Sugar.  Pursuant to Regulation No. 13, the Department of Agriculture issued a detention order prohibiting appellees from selling the sugar to grocery stores in Puerto Rico.  Starlight/PanAm sued, seeking declaratory and injunctive relief, as well as damages, and based their challenge of Regulation No. 13 on the Commerce and Equal Protection Clauses of the United States Constitution.

_____

[2] The Puerto Rico Supreme Court's holdings on the applicability of the Commerce Clause to Puerto Rico will be discussed later in this Opinion.

-5-

The district court granted Starlight/PanAm's motion for preliminary injunctive relief, holding that there was a likelihood of success on the merits as to both the Commerce Clause and equal protection arguments. Starlight Sugar I, 909 F. Supp. at 861. The court found that Regulation No. 13 "facially discriminates against interstate commerce" and that the government had failed to assert a compelling interest sufficient to justify this "discriminatory purpose and effect," thus implicating the Commerce Clause. Id. In addition, the district court held that the government had put forth no "legitimate government objective" for Regulation No. 13, and that the regulation, therefore, likely violated the Equal Protection Clause. Id.

This Court affirmed the grant of the preliminary injunction, finding "no abuse of discretion and no error of law." Starlight Sugar II, 114 F.3d at 331. Regarding the likelihood of success on the merits, we "note[d]" that "Commerce Clause caselaw strongly supports the position of the plaintiff sugar importers." Id. We characterized Regulation No. 13 as "facially discriminatory," and thus "presumptively invalid." Id.

In the most recent development of this case, the district court ruled, in an Opinion and Order, in favor of Starlight/PanAm's Motion for Summary Judgment. Starlight Sugar, Inc. v. Soto, 86 F. Supp. 2d 23 (2000) [hereinafter Starlight Summary Judgment]. The

court affirmed its prior intimations that Market Regulation No. 13 violated both the Commerce and Equal Protection Clauses. Pursuant to this finding, the district court granted injunctive relief against Soto. The court next turned to Starlight/PanAm's § 1983 claim for damages against Soto in his personal capacity, and, in that context, analyzed Soto's assertion of qualified immunity.

Citing Harlow v. Fitzgerald, 457 U.S. 800 (1981), the district court identified a two-part test for determining whether an official is entitled to qualified immunity: (1) whether the law was clearly established at the time the action was taken; and (2) if so, whether the official knew or reasonably should have known that the action or inaction would violate petitioner's constitutional rights. Id. at 818. The district court found that the law was clearly established and that Soto knew or should have known that enforcement of Market Regulation No. 13 violated Starlight/PanAm's constitutional rights. The court called the Commerce Clause "a cornerstone of our economy and our country" and was "hard pressed to believe that Soto, an attorney, would be unaware of the existence of the Commerce Clause." Starlight Summary Judgment, 86 F. Supp. 2d at 30. In a footnote, the court stated, "A similar result is found when analyzing the Equal Protection Clause . . . ." Id. at 30 n.9.

Appellant Soto brings this interlocutory appeal pursuant to 28 U.S.C. § 1291, challenging only the district court's rejection

-7-

of his qualified immunity defense. See Mitchell v. Forsyth, 472 U.S. 511, 530 (1984). Entitlement to the defense of qualified immunity is a question of law subject to de novo review. See, e.g., Elder v. Holloway, 510 U.S. 510, 516 (1994). Accordingly, we proceed to the merits of this appeal.

## DISCUSSION

This Court has identified a three-step process for evaluating qualified immunity claims: (1) whether the claimant has alleged the deprivation of an actual constitutional right; (2) whether the right was clearly established at the time of the alleged action or inaction; and (3) if both of these questions are answered in the affirmative, whether an objectively reasonable official would have believed that the action taken violated that clearly established constitutional right. Nelson v. Kline, 242 F.3d 33, (1st Cir. 2001); Abreu-Guzmán v. Ford, 241 F.3d 69, 73 (1st Cir. 2001); see Wilson v. Layne, 526 U.S. 603, 609 (1999). This particular order of analysis "is designed to 'spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit.'" Wilson, 526 U.S. at 609 (quoting Siegert v. Gilley, 500 U.S. 226, 232 (1991)). Addressing the constitutional question first "promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." Id.

The district court held that Market Regulation No. 13 violated clearly established Commerce Clause and Equal Protection Clause caselaw. We will examine both, turning first to the Commerce Clause claim.

## A. Commerce Clause Analysis

In explaining "dormant" Commerce Clause jurisprudence, the district court quoted the following passage:

> This "negative" aspect of the Commerce Clause prohibits economic protectionism--that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors. . . . Thus, state statutes that clearly discriminate against interstate commerce are routinely struck down . . . unless the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism.

Starlight Sugar I, 909 F. Supp. at 857 (quoting West Lynn Creamery, Inc. v. Healy, 512 U.S. 186, 192-93 (1994) (quoting New England Co. of Ind. v. Limbach, 486 U.S. 269, 273-74 (1988))). The district court found Market Regulation No. 13 to be facially discriminatory, falling within a category of government regulation that the dormant Commerce Clause renders invalid. The court further held that Soto had failed to advance any justification for the repackaging prohibition that did not ultimately amount to economic

-9-

protectionism.[3]  Id. at 860-61; see also Starlight Sugar II, 114 F.3d at 331-32.

The Commerce Clause "confer[s] a 'right' to engage in interstate trade free from restrictive state regulation."  Dennis v. Higgins, 498 U.S. 439, 448 (1990).  We agree with the district court that Starlight/PanAm have identified a deprivation of this constitutional right.  The next question to address is whether this right was clearly established at the time of Soto's enforcement of Regulation No. 13.  We hold that it was not.

Citing First Circuit precedent, the district court stated that: "The constraints of the dormant Commerce Clause apply equally to Puerto Rico."  Starlight Sugar I, 909 F. Supp. at 858.  In Trailer Marine Transport Corp. v. Rivera-Vázquez, 977 F.2d 1 (1st Cir. 1992), we explicitly considered "whether and how the Commerce Clause constrains legislation and administrative action of Puerto Rico." Id. at 6.  Characterizing Puerto Rico's status as "unique," we noted that Puerto Rico has no voting representation in Congress, that Congress may fashion laws in a manner that treats Puerto Rico differently from the states, that not all federal constitutional

_____

[3] Belated citation at oral argument to the quality control purpose articulated in the Introduction to Market Regulation No. 13 is unavailing to Soto as to the Commerce Clause challenge, because it was never presented in the lower court, nor was it fully briefed on appeal. See, e.g., King v. Town of Hanover, 116 F.3d 965, 970 (1st Cir. 1997). This justification will be discussed in greater depth, however, in the equal protection section of this Opinion.

-10-

rights apply in Puerto Rico, and that it has not been determined whether Puerto Rico is governed by the Fifth or by the Fourteenth Amendment.  Id. at 7.  Nevertheless, we concluded that Puerto Rico is bound by the dormant Commerce Clause in the same way that the states are.  The Commerce Clause's purposes of "foster[ing] economic integration and prevent[ing] local interference with the flow of the nation's commerce . . . appl[y] with equal force to official actions of Puerto Rico."  Id. at 8.  In addition, we found that Puerto Rico enjoys sufficient autonomy as an entity to justify treating it as independent of Congress and thus subject to dormant Commerce Clause restraints.  Id.

The Supreme Court of Puerto Rico, we have noted, "has taken a different view."  Id. at 9.  Commenting on the scope of the application of the Commerce Clause to Puerto Rico, that court said: "This interstate commerce relation [between Puerto Rico and the United States] has constitutionally had, and still has, contours which are different from the relation which under the Constitution prevails among states of the Union."  R.C.A. v. Government of the Capital, 91 P.R.R. 404, 419 (P.R. 1964).  This amorphous statement eludes concrete interpretation, and the opinion itself fails to further elaborate on how Puerto Rico's relationship with the United States would affect the application of the Commerce Clause to Puerto Rico.  Subsequent decisions by the Puerto Rico Supreme Court are

-11-

similarly unilluminating.  See, e.g., Iberia v. Secretario de Hacienda, 135 P.R. Dec. 57, 72-73 & n.11 (P.R. 1993) (finding it unnecessary to comment on the applicability of the Commerce Clause to Puerto Rico); Marketing v. Departamento de Agricultura, 118 P.R. Dec. 319 (P.R. 1987) (deciding that the dormant Commerce Clause question need not be answered in the course of decision).  One interpretation of the R.C.A. language by this Court, as illustrated by our comment in Trailer Marine, and the Puerto Rico federal district courts is that the dormant Commerce Clause does not apply to Puerto Rico. García, 686 F. Supp. at 968; Sea-Land Servs., Inc. v. Municipality of San Juan, 505 F. Supp. 533, 542 (D.P.R. 1980).  In an earlier opinion, however, we rejected an argument that the Puerto Rico courts were closed to a Commerce Clause claim, stating that: "In our view, the position taken by the Supreme Court of Puerto Rico in [R.C.A.] is far more flexible."  Carrier Corp. v. Pérez, 677 F.2d 162, 165 (1st Cir. 1982).

In an effort to clarify how we interpret the Puerto Rico Supreme Court's position, we offer the following commentary.  First, the R.C.A. case offers the only substantive statement on application of the Commerce Clause to Puerto Rico by the Puerto Rico Supreme Court.  It, at minimum, suggested that there could be situations in which the Commerce Clause would not apply to Puerto Rico, even though it would constrain a State in comparable circumstances.  Second, the

-12-

R.C.A. case was written in 1964, and the relationship between Puerto

Rico and the United States has been refined and clarified since that

time.  See, e.g., Examining Bd. of Eng'rs v. Flores de Otero, 426

U.S.572, 595 (1976) ("the purpose of Congress in the 1950 and 1952

legislation was to accord to Puerto Rico the degree of autonomy and

independence normally associated with States").  Noting that in more

recent years Puerto Rico has acted and been treated more like a

state, we overturned our 1947 holding in Buscaglia v. Ballester, 162

F.2d 805 (1st Cir. 1947), that the dormant Commerce Clause did not

apply to Puerto Rico.  Trailer Marine, 977 F.2d at 9.  The R.C.A.

decision relied, at least in part, on Buscaglia.  R.C.A., 91 P.R.R.

at 419 n.9.  Perhaps recognizing that the status of Puerto Rico is

not as was perceived at the time that R.C.A. was decided, and that

the precedential underpinnings for its Commerce Clause comments have

been weakened, the Puerto Rico Supreme Court has intimated that the

applicability of the dormant Commerce Clause to Puerto Rico is an

unresolved question.  See Iberia, 135 P.R. Dec. at 72-73 & n.11;

Marketing, 118 P.R. Dec. at 319.  Unfortunately, this has not spurred

the Puerto Rico Supreme Court to address the issue squarely.  As a

result, we are left with the vague language in R.C.A. that the

Commerce Clause, as applied to Puerto Rico, has "contours which are

different" from those when applied to the States.  91 P.R.R. at 419.

From this conclusion, we proceed with the qualified immunity analysis.

When determining whether a constitutional right is clearly established for purposes of qualified immunity, state,[4] as well as federal, decisions can be considered.  See Cinelli v. Cutillo, 896 F.2d 650, 655 (1st Cir. 1990) (citing a Massachusetts Supreme Judicial Court opinion at length in concluding that the right was clearly established).  The Seventh Circuit has commented:

> State judges like federal judges take an oath to uphold the Constitution of the United States, and unlike the converse case of federal judges enforcing state law, where it is accepted that the ultimate authority on questions of state law resides with state rather than federal courts, the federal courts of appeals do not have the ultimate authority to decide issues of federal law.

Burgess v. Lowery, 201 F.3d 942, 945 (7th Cir. 2000).  In turning to both the state and federal case law in this instance, we find a potential conflict.

_____

[4] Decisions of the Puerto Rico Supreme Court in these circumstances should be considered to have the same force as if they originated in a state supreme court.  See Cruz v. Melecio, 204 F.3d 14, 22-25 (1st Cir. 2000) (ordering stay of federal district court proceedings pending resolution by the Puerto Rico Supreme Court of a parallel suit: "the case before the Puerto Rico Supreme Court is more comprehensive than the newer federal case because it covers both commonwealth and federal constitutional claims.  Plainly, the interests of judicial efficiency and eliminating piecemeal litigation favor resolving these closely related claims in a single forum.").

-14-

In Trailer Marine, as noted, we held that the dormant Commerce Clause applies to Puerto Rico; the Puerto Rico Supreme Court took a different view in the R.C.A. case. The United States Supreme Court has anticipated this potential for disagreement: "Each system proceeds independently of the other with ultimate review in this Court of the federal questions raised in either system. Understandably this dual court system [i]s bound to lead to conflicts and frictions." Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs, 398 U.S. 281, 286 (1970).

In the past, we have held that a right can be treated as clearly established in this circuit if we have unequivocally identified that right in prior decisions, regardless of Supreme Court silence on the subject or a lack of unanimity among the circuits. Newman v. Massachusetts, 884 F.2d 19, 25 (1st Cir. 1989). However, Newman did not address whether a right could be considered clearly established in a case such as this, where there is arguably contrary authority from the highest court of a state within the First Circuit. This distinct circumstance necessarily impacts our view on whether a right is clearly established.

The Seventh Circuit has stated that an official should not be shielded by the defense of qualified immunity simply because there is "one contrary decision at either the federal court of appeals or the state supreme court level." Burgess, 201 F.3d at 946 (involving

-15-

the constitutionality of strip searching prison visitors without reasonable suspicion).  Again, the precedent under examination in Burgess may be distinguished, as the only conflicting authority came from a state court in another circuit, the Supreme Court of Hawaii. Because neither Burgess nor Newman dealt with conflicting precedent from a state within the circuit, much less conflicting precedent from the state in which the alleged constitutional violation occurred, our reliance on them for guidance in our assessment of qualified immunity in this case is necessarily circumspect.

We conclude that the applicability of the dormant Commerce Clause to Puerto Rico is disputed, and, thus, appellees' attendant constitutional right is not clearly established.[5]  Our holding is consistent with and respects the role of state systems in identifying and defining federal constitutional rights on a parallel basis with the federal courts with ultimate supervisory authority to harmonize any potential conflicts residing in the United States Supreme Court.[6]

---

[5]  This does not mean that a Commerce Clause right, such as the one identified in this case, will not be considered clearly established for purposes of qualified immunity analysis indefinitely in the face of continued silence on the question by the Puerto Rico Supreme Court and the United States Supreme Court.

[6]  Prior to 1961, the First Circuit was empowered to review decisions of the Puerto Rico Supreme Court that resolved federal questions.  28 U.S.C. § 1293 (1959); 28 U.S.C. § 1294(6)(1959).  In 1961, §§ 1293 & 1294(6) were repealed, and since then, "[f]inal judgments or decrees rendered by the Supreme Court of the Commonwealth of Puerto Rico may be reviewed by the Supreme Court by writ of certiorari."  28 U.S.C. § 1258.

Soto is, therefore, protected by the qualified immunity defense as far as the Commerce Clause challenge is concerned.

## B.  Equal Protection Analysis

The district court provided limited explanation for its conclusion that Soto's enforcement of Market Regulation No. 13 violated the Equal Protection Clause, citing only Metropolitan Life Insurance Co. v. Ward, 470 U.S. 869, 880 (1985) [hereinafter MetLife], in support of its conclusion.  Starlight Sugar I, 909 F. Supp. at 861.  The district court's treatment was even more summary in denying Soto's qualified immunity defense, disposing of the equal protection issue with a footnote reference to the Opinion's Commerce Clause findings.  Starlight Summary Judgment 86 F. Supp. 2d at 30 n.9.  A review of MetLife reveals that Commerce Clause and Equal Protection Clause analysis should not be conflated:

> Under Commerce Clause analysis, the State's interest, if legitimate, is weighed against the burden the state law would impose on interstate commerce.  In the equal protection context, however, if the State's purpose is found to be legitimate, the state law stands as long as the burden it imposes is found to be rationally related to that purpose, a relationship that is not difficult to establish.

470 U.S. at 881.  The district court, then, did not sufficiently consider whether Market Regulation No. 13 violated the Equal Protection Clause, and we do not adopt the court's findings or conclusion in this regard.

-17-

If neither a fundamental right nor a suspect classification is involved in an Equal Protection Clause challenge, courts will uphold legislation that provides for differential treatment upon a mere showing of a rational relationship between the disparate treatment and a legitimate government objective. Fireside Nissan, Inc. v. Fanning, 30 F.3d 206, 219 (1st Cir. 1994). In making such an inquiry, any "plausible" justification will suffice, and effectively ends the analysis. FCC v. Beach Communications, Inc., 508 U.S. 307, 313-14 (1993). In fact, the party challenging the legislation bears the burden of "negat[ing] every conceivable basis which might support it." Id. at 315 (quoting Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 364 (1973)).

The district court addressed one government justification of Market Regulation No. 13, namely, protection of the local sugar industry, and cited MetLife for the proposition that this is not a legitimate government objective. Starlight Sugar I, 909 F. Supp. at 861. We are not persuaded that MetLife is so broad; in fact, it expressly limits its holding to the particular facts of the case: "This case does not involve or question . . . the broad authority of a State to promote and regulate its own economy. We hold only that such regulation may not be accomplished by imposing discriminatorily higher taxes on nonresident corporations solely because they are nonresidents." 470 U.S. at 882 & n.10.

-18-

Even if Soto's stated justification for enforcing Market Regulation No. 13 is insufficient to uphold the rationality of the legislation, this Court is obligated to seek out other conceivable reasons for validating Regulation No. 13. Here, the Introduction to Market Regulation No. 13 provides a health and safety justification: "to guarantee that imported sugar that may be marketed in Puerto Rico meets certain minimum quality requirements." That this was not the reason provided by Soto for his enforcement is irrelevant to an equal protection inquiry. See Beach Communications, 508 U.S. at 315.

Although this issue was never addressed by the parties, the district court discussed, and dismissed, the health and safety argument. Starlight Sugar I, 909 F. Supp. at 860. The district court pointed out that there had been no complaints as to the quality of imported sugar prior to the ban on repackaging, and that the Department of Agriculture does not conduct "wholesomeness" inspections. Id. In addition, the court commented that there were less burdensome methods for ensuring the quality of imported sugar than the restrictions found in Regulation No. 13. Id.

We do not doubt the district court's observations in this regard. For the most part, however, they are only relevant to Commerce Clause, not Equal Protection Clause, analysis. For one, equal protection does not demand that a State employ less burdensome alternatives if those are available. A court's belief that the

-19-

legislature's alleged goals could be accomplished through more reasonable means is irrelevant to rational-basis review. <u>Beach Communications</u>, 508 U.S. at 314. In addition, the district court conceded that: "[i]t is true that section V of Regulation 13 establishes minimum quality standards for sugar brought into Puerto Rico." <u>Starlight Sugar I</u>, 909 F. Supp. at 860. Given the regulation's stated purpose of quality control, and the specifications throughout that appear to intend to further that goal, it is at least "plausible" that Section VI of Regulation No. 13 is rationally related to health and safety considerations. Since equal protection analysis does not subject "legislative choice . . . to courtroom factfinding," and a court may uphold such legislation on the basis of "rational speculation unsupported by evidence or empirical data," <u>Beach Communications</u>, 508 U.S. at 315, we need go no further.

## CONCLUSION

We hold that Starlight/PanAm's Equal Protection Clause challenge to Secretary Soto's enforcement of Market Regulation No. 13 fails at the first step of the analysis, demonstrating the actual deprivation of a constitutional right, and that Soto is accordingly protected by the defense of qualified immunity. Based on this and our earlier conclusion that the applicability of the dormant Commerce Clause to Puerto Rico is not "clearly established," appellant Soto

-20-

cannot be held personally liable for his actions.  The district court's decision with respect to Soto's qualified immunity defense is **reversed.**