INTERNATIONAL HARVESTER COMPANY OF PUERTO RICO, demandante y recurrida, *v.* SECRETARIA DE HACIENDA, demandada y recurrente.

*Número:* R-82-511      *Resuelto:* 10 de mayo de 1983

*Miguel Pagán, Procurador General Interino,* y *Justo Gorbea Varona, Procurador General Auxiliar,* abogados de la Secretaria de Hacienda, recurrente; *Rafael Fernández Suárez,* de *McConnell, Valdés, Kelley, Sifre, Griggs & Ruiz Suria,* abogado de la recurrida.

El Juez Presidente Señor Trías Monge emitió la opinión del Tribunal.

En 1972 la International Harvester Company of Puerto Rico, Inc. ("International Harvester"), una corporación doméstica, tomó prestada al Marine Midland Bank-Western ("Marine") la suma de dos millones de dólares. Marine es un banco organizado bajo las leyes del estado de Nueva York, que no hace ni ha hecho nunca negocios en Puerto Rico. Marine tampoco tiene o ha tenido oficina o agentes en Puerto Rico ni está relacionado con International Harvester. El préstamo fue negociado y consumado en la ciudad de Buffalo, Nueva York, donde se mantuvo siempre el pagaré

representativo de la deuda. Los plazos de principal e interés se pagaban en las oficinas de Marine, en Buffalo.

Durante el año de 1975 International Harvester tomó a préstamo al First National Bank of Maryland ("First National") un millón quinientos mil dólares. Estos préstamos fueron negociados y consumados en Chicago, Illinois. Los pagarés correspondientes se mantuvieron siempre fuera de Puerto Rico. First National no ha hecho nunca negocios en Puerto Rico ni tiene oficinas o agentes aquí ni está relacionado con International Harvester. Los plazos de principal e intereses se pagaban fuera de Puerto Rico.

Ninguno de estos préstamos estuvo garantizado con propiedad alguna localizada en Puerto Rico. El dinero recibido de estos préstamos, sin embargo, se utilizó para las operaciones de International Harvester en Puerto Rico y los intereses se pagaron de fondos de International Harvester depositados en cuentas bancarias en Puerto Rico.

El 14 de diciembre de 1977, el Secretario de Hacienda remitió a International Harvester, tras la celebración de una vista administrativa, una notificación final de deficiencia por la suma de $229,479.02, por considerar el Secretario que los intereses pagados a Marine y First National están sujetos a retención en el origen. International Harvester impugnó la deficiencia. El Tribunal Superior la anuló, por estimar que la contribución impuesta viola la cláusula del debido proceso de ley. Hacienda ha acudido en alzada ante nosotros. Sostiene que la Asamblea Legislativa de Puerto Rico goza de poder para exigir la retención concernida en este género de casos. International Harvester argumenta que la imposición contraviene el debido proceso de ley. International Harvester no efectúa alegación alguna respecto al efecto de la retención sobre el comercio interestatal.

Durante los años en cuestión, la Sec. 231 de la Ley Núm. 91 de 29 de junio de 1954 (13 L.P.R.A. sec. 3231) disponía en parte:

Se impondrá, cobrará y pagará para cada año contributivo, en lugar de la contribución impuesta por las secciones 3013 y 3015 de este título, sobre el monto recibido por toda corporación o sociedad extranjeras no dedicadas a industria o negocio en Puerto Rico, procedente de fuentes dentro de Puerto Rico por concepto de intereses (excepto intereses sobre depósitos con personas dedicadas al negocio bancario e intereses declarados exentos bajo la sección 3022(b)(4) de este título), dividendos, participación en beneficios de sociedades, rentas, salarios, jornales, primas, anualidades, compensaciones, remuneraciones, emolumentos, u otras ganancias, beneficios e ingresos anuales o periódicos que sean fijos o determinables, una contribución del 29 por ciento de dicho monto.

La Sec. 144(a) de la referida ley, 13 L.P.R.A. sec. 3144, provee en parte que:

En el caso de corporaciones y sociedades extranjeras sujetas a tributación bajo este subtítulo no dedicadas a industria o negocio dentro de Puerto Rico se deducirá y retendrá en el origen, en la misma forma y sobre las mismas partidas de ingreso que se proveen en la sección 3143 de este título, una contribución igual al 29 por ciento de dicho ingreso. . . .

Estas disposiciones corresponden a las Secs. 231 y 144 de la Ley Federal de Contribución sobre Ingresos de 1938 (52 Stat. 447). [1]

---

[1] La Sec. 231 dispone:

"There shall be levied, collected, and paid for each taxable year, in lieu of the tax imposed by sections 13 and 14, upon the amount received by every foreign corporation not engaged in trade or business within the United States and not having an office or place of business therein, from sources within the United States as interest (except interest on deposits with persons carrying on the banking business), dividends, rents, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable annual or periodical gains, profits, and income, a tax of 15 per centum of such amount . . . ."

La Sec. 144 expresa:

"In the case of foreign corporations subject to taxation under this title not engaged in trade or business within the United States and not having any office or place of business therein, there shall be deducted and withheld at the source in the same manner and upon the same items of income as is provided in section 143 a tax equal to 15 per centum thereof . . . ."

La tasa fue aumentada a 30% en 1942. (68A Stat. sec. 1442.)

International Harvester no cuestiona el hecho de que, desde el punto de vista estatutario, los intereses recibidos por corporaciones extranjeras están sujetos a tributación. Lo que sostiene es que la aplicación del estatuto a este caso contraviene el debido proceso de ley. Aunque los bancos interesados no son partes en este litigio, International Harvester tiene capacidad para formular el referido planteamiento. *Harvester Co.* v. *Dept. of Taxation*, 322 U.S. 435, 440 (1944).

Tanto en el caso de impugnaciones de tributos análogos, fundadas en la cláusula de debido proceso de ley, como en las basadas en la cláusula sobre el comercio interestatal, diversos mitos y ficciones han afectado por largo tiempo el análisis de los problemas planteados. *Union Cen. Life Ins. Co.* v. *Tesorero de P.R.*, 19 D.P.R. 900 (1913), ilustra una de las formas equivocadas de enfocar el asunto.

En *Union Cen. Life Ins. Co.*, supra, el Tesorero de Puerto Rico impuso contribución sobre la propiedad a una compañía extranjera que prestaba dinero en Puerto Rico. Los préstamos estaban asegurados por propiedades radicadas aquí. La compañía estaba autorizada para efectuar negocios aquí y contaba con un agente residente. El Tribunal se dedicó a inquirir sobre el *situs* del bien tasado. Estimó que se trataba de un crédito en poder de la compañía extranjera y que, conforme a la máxima *mobilia sequuntur personam*, los créditos seguían la persona del acreedor. Ya que el *situs* radicaba fuera de la Isla, la imposición por Puerto Rico de contribuciones sobre tal propiedad, resolvió el Tribunal, violaba el debido proceso de ley.

En *Gallardo, Tesorero* v. *United P.R. Sugar Co.*, 42 D.P.R. 646 (1931), volvimos a la carga con la ficción de *mobilia sequuntur personam*. El problema en *Gallardo* era análogo al que se presenta en el caso de autos. Se impugnaba allí la obligación de retener en el origen, por corporaciones domésticas, cierta contribución por intereses pagados a varias corporaciones extranjeras en los Estados Unidos.

Ninguna de esas corporaciones tenía oficina o agente en Puerto Rico. La principal alegación del contribuyente fue que las deudas no tenían un *situs* imponible en Puerto Rico. Estuvimos de acuerdo. Explicamos que "así como los bienes inmuebles y muebles tangibles, bajo un debido proceso de ley únicamente pueden tener un solo *situs* para tributación, de igual forma, con muy limitadas excepciones, los bienes intangibles deben tener un solo *situs* para fines de contribución. A la máxima *Mobilia seguuntur* [sic] *personam*, en bien de la justicia y la conveniencia, se le da la más amplia aplicación posible". Pág. 652.

■ En los casos relativos al comercio interestatal, la principal dificultad arrancó de la antigua e inflexible doctrina de que una contribución estatal sobre cualquier actividad o proceso del comercio entre los estados constituía una reglamentación nula. *Case of the State Freight Tax*, 82 U.S. 232 (1872), y *State Tax on Railway Gross Receipts*, 82 U.S. 284 (1872). Muchas contribuciones estatales de diverso género fueron invalidadas por la ciega aplicación de esta regla. W. B. Lockhart, *A Revolution in State Taxation of Commerce?*, 65 Minn. L. Rev. 1025, 1029 (1981). Más de un siglo después, una serie de casos, comenzando con *Complete Auto Transit, Inc.* v. *Brady*, 430 U.S. 274 (1977), y *Washington Rev. Dept.* v. *Stevedoring Assn.*, 435 U.S. 734 (1978), han estado sacudiendo los cimientos de la regla. Tanto en los casos de debido proceso de ley como en los de comercio interestatal, el énfasis ha ido recayendo en el examen del efecto práctico de la contribución y en las realidades económicas envueltas, en vez de en la aplicación automática de formalidades legalistas.

■ Con estos desarrollos en mente, analicemos el argumento de International Harvester de que la Asamblea Legislativa no puede, sin violar el debido proceso de ley, ordenarle que retenga en el origen el 29% de los intereses que pague a compañías extranjeras bajo los hechos de este caso.

■ Las cláusulas del debido proceso de ley de la Constitución de Estados Unidos y de la Constitución del Estado Libre Asociado de Puerto Rico imponen dos requisitos para que puedan tributar localmente los ingresos generados por las actividades de un negocio interestatal. En primer término, debe haber "alguna conexión mínima entre tales actividades y el estado impositor". En segundo lugar, "el ingreso atribuido al estado para fines contributivos debe estar racionalmente relacionado con 'valores conectados con el estado impositor'". *Moorman Mfg. Co.* v. *Bair*, 437 U.S. 267, 273 (1978).

■ El segundo requisito no nos concierne aquí, ya que lo que significa esencialmente es que un estado sólo puede imponer tributos a aquella parte del ingreso de una corporación multiestatal que esté racionalmente vinculada a las actividades que ésta realice en el estado. Véase: *Mobil Oil Corp.* v. *Commissioner of Taxes*, 445 U.S. 425 (1980).

■ En lo que respecta al primer requisito, la conexión mínima no tiene que ser exclusivamente, como a veces se ha asumido en forma incorrecta, entre el estado impositor y la persona o entidad en que recae a fin de cuentas la contribución. El nexo puede ser, también, entre el estado impositor y la actividad o transacción tributable. *Nat. Bellas Hess* v. *Dept. of Revenue*, 386 U.S. 753, 756 (1967); *Moorman Mfg. Co.*, supra, págs. 272–273. La determinación del nexo mínimo necesario no es un ejercicio mecánico abstracto. Su orientación debe ser eminentemente pragmática. *Cf. Vda. de Miranda* v. *Srio. de Hacienda*, 114 D.P.R. 11 (1983). ¿Toca la actividad tributable algún interés o valor legítimo del estado? La cuestión primordial es si en la realidad del mundo económico y dentro del sistema federativo en que vivimos, la obligación tributaria impuesta es justa o no.

■ Cuando existe un vínculo evidente entre la entidad extranjera concernida y el estado impositor, tal como una oficina o agente en el estado, es obvio que no se plantea problema alguno de debido proceso de ley en casos

como el presente. Tampoco cuando el prestatario está afiliado o íntimamente relacionado con el prestamista. *P.R. Telephone Co.* v. *Srio. Hacienda,* 79 D.P.R. 895 (1957). En el caso de autos, no obstante, una mirada superficial a los hechos no parece revelar relaciones entre los bancos extranjeros y Puerto Rico. La cláusula del debido proceso de ley no constituye, sin embargo, un simple reto al ingenio de los diseñadores de transacciones mercantiles. No se anula una contribución como la presente con solo ejercer cuidado en mantener al prestamista alejado de la jurisdicción impositora y del prestatario, con efectuar el préstamo fuera de ésta y conservar allí el pagaré correspondiente, con no aceptar garantías sobre bienes inmuebles radicados en el estado impositor ni con tomar otras precauciones análogas. Nada de esto puede ocultar las realidades subyacentes en el caso de autos. Los bancos extranjeros prestaron dinero a una corporación doméstica para su uso en Puerto Rico. El pago de la deuda habría de provenir de propiedades localizadas y operaciones a realizarse en Puerto Rico. Puerto Rico tiene un gobierno estable que reconoce y protege las deudas y las acreencias de los bancos domésticos y extranjeros. El Gobierno de Puerto Rico permite a International Harvester deducir en su planilla de contribución sobre ingresos los intereses pagados a los bancos concernidos. No prohíbe o limita la transferencia de fondos locales al exterior para el pago de la deuda. Existen, incuestionablemente, nexos estrechos en el caso presente entre Puerto Rico y la actividad tributable. Puerto Rico tiene un interés legítimo en imponer contribuciones y en hacerlas efectivas a través de la retención en el origen, sobre los intereses a utilizarse en Puerto Rico que devenguen los préstamos bancarios que provengan de fuentes extranjeras. Los bancos extranjeros se benefician de las condiciones que ofrece el ordenamiento jurídico y económico de Puerto Rico, a cuyo amparo se generaron los fondos necesarios para la satisfacción de la deuda de International Harvester.

Aunque International Harvester no ha hecho alegación alguna sobre el impacto de la contribución impugnada contra el comercio interestatal, debe señalarse que, aun de haberla hecho, el planteamiento no hubiese podido ser seriamente considerado por este Tribunal, dada la naturaleza del récord en el caso de autos. El récord está totalmente huérfano de los datos económicos necesarios para poder anular una contribución sobre tal base. Para la prolijidad práctica del récord requerido en la actualidad, véase: *Moorman Mfg. Co.*, supra.

█ Por las razones expuestas, *resolvemos que las Secs. 144 y 231 de la Ley Núm. 91 de 29 de junio de 1954 (13 L.P.R.A. secs. 3144 y 3231) no violan las cláusulas de debido proceso de ley de la Constitución de Estados Unidos ni de la de Puerto Rico.*

*Se revocará la sentencia recurrida.*

El Juez Asociado Señor Irizarry Yunqué no intervino.