GÓMEZ HERMANOS, INC., demandante y recurrida, *v.* SECRETARIO DE HACIENDA, demandado y recurrente.

*Número:* R-82-481      *Resuelto:* 10 de junio de 1983

*Miguel Pagán, Procurador General Interino,* y *Justo Gorbea Varona, Procurador General Auxiliar,* abogados de El Pueblo, recurrente; *Rodrigo Otero Suro,* de *Otero Suro & Otero Suro,* abogado de la recurrida.

EL JUEZ PRESIDENTE SEÑOR TRÍAS MONGE emitió la opinión del Tribunal.

Este caso presenta una cuestión análoga a la resuelta por este Tribunal en *Int'l Harvester Co. v. Sria. de Hacienda,* 114 D.P.R. 281 (1983), excepto que el contexto en que se plantea envuelve o aparenta envolver aspectos del comercio internacional.

La corporación contribuyente, Gómez Hermanos, Inc. ("Gómez Hermanos"), es una corporación organizada en Puerto Rico, que se dedica a la importación, distribución y venta aquí de vehículos de motor marca Toyota y otros. Gómez Hermanos impugnó en el Tribunal Superior una deficiencia que le fue notificada por el Departamento de Hacienda por no haber retenido en ciertos años la contribución en el origen sobre intereses pagados a Fernchurch Corporation ("Fernchurch"), una corporación extranjera con oficinas en la ciudad de Nueva York. El tribunal anuló la contribución por estimar que ésta violaba la cláusula del debido proceso de ley por razones similares a las expuestas por el mismo foro en *Int'l Harvester Co.,* supra. Acordamos revisar esta determinación. Los hechos son los siguientes.

Los vehículos Toyota son fabricados por Toyota Motor Co. y vendidos por Toyota Motor Sales Co. Las dos entidades han sido organizadas en el Japón y allí hacen negocios.

Tozer, Kemsley & Millbound Kabuschiki Kaischa ("Tozer") es una entidad japonesa, subsidiaria de Tozer, Kemsley

Millbound Ltd., de Londres, Inglaterra. Tozer, conforme el sistema de exportación de productos japoneses, es una compañía intermediaria que adquiere los vehículos y los vende a los poseedores de franquicias en el extranjero. Tozer se ocupa de que los embarques al extranjero cumplan con la reglamentación del Ministerio de Industria, Comercio e Inversiones del Japón.

Para importar vehículos del Japón, Gómez Hermanos estableció líneas de crédito con diferentes bancos japoneses, todos los cuales tienen sucursales en la ciudad de Nueva York, pero que no realizan ni están autorizados a realizar negocios en Puerto Rico, ni cuentan con oficinas o agentes aquí. Tozer ayudó a Gómez Hermanos a obtener las referidas líneas de crédito.

A fin de adquirir los vehículos, Gómez Hermanos enviaba su orden a Toyota Motor Sales en Japón, con copia a Tozer. Al recibir la copia de la orden de compra, Tozer gestionaba con uno de los bancos japoneses, en nombre de Gómez Hermanos, el adelanto de la suma necesaria para pagar los gastos de adquisición y de otra índole.

Toyota remitía a Tozer la factura correspondiente. Tozer, tras estimar su comisión y otros costos, obtenía el pago total de la factura por el banco japonés. El banco japonés expedía entonces un giro, en nombre de Gómez Hermanos, pagadero en la oficina del banco girante en Nueva York. Copias no negociables del giro y de los documentos de embarque se entregaban a Tozer.

Al recibo del giro bancario y los documentos originales de embarque, la oficina de Nueva York del banco japonés girante notificaba a Fernchurch, agente de Tozer. Fernchurch aceptaba en nombre de Gómez Hermanos el giro expedido, recogía los documentos de embarque y se los remitía. A la fecha de vencimiento del giro, Gómez Hermanos le enviaba a Fernchurch un cheque a favor de ésta, contra la cuenta de Gómez Hermanos en un banco doméstico, por

el importe del giro, suma que incluía los intereses del préstamo. Fernchurch le pagaba entonces al banco japonés.

La impugnación por Gómez Hermanos de su obligación de retener en el origen la contribución fijada por la Sec. 231 de la Ley Núm. 91 de 29 de junio de 1954 (13 L.P.R.A. sec. 3231) se funda en la cláusula de debido proceso de ley. Por las razones expuestas en *Int'l Harvester Co.*, supra, la impugnación por tal motivo es improcedente.

Examinemos los hechos del caso de autos, a pesar de que Gómez Hermanos no hizo el planteamiento en instancia ni ante este foro, bajo la premisa, *argüendo*, que debe escudriñarse el tributo en cuestión desde el punto de vista de su impacto sobre el comercio extranjero.[1]

Tanto el comercio interestatal como el extranjero no se consideran inmunes hoy, contrario a la doctrina de hace algunos años, al poder de tributación de los estados. *Japan Line, Ltd.* v. *County of Los Angeles*, 441 U.S. 434 (1979). En el caso del comercio interestatal, la jurisprudencia exige que la legislación tributaria satisfaga cuatro requisitos: la contribución debe aplicarse a una actividad que posea un nexo sustancial con el Estado impositor; la contribución debe distribuirse justamente; la contribución no debe discriminar contra el comercio interestatal; y debe estar adecuadamente relacionada con los servicios que el Estado provea. *Complete Auto Transit, Inc.* v. *Brady*, 430 U.S. 274, 279 (1977); *Washington Rev. Dept.* v. *Stevedoring Assn.*, 435 U.S. 734, 750 (1978).

Cuando un estado grava el comercio extranjero, deben tomarse en consideración otros dos factores. El hecho de si la entidad extranjera está sujeta a tributación, debe examinarse. Debe determinarse, también, si se trata de un área

---

[1] Aquí podría argumentarse concebiblemente, si se atiende a la realidad de los hechos, que el problema no consiste en la imposición de un tributo a una compañía extranjera dedicada al comercio extranjero, sino a una compañía extranjera dedicada al comercio interestatal.

donde la uniformidad federal es esencial. *Japan Line, Ltd.*, supra, págs. 446–448.

■ En *Int'l Harvester Co.*, supra, nos referimos a la doctrina de los efectos prácticos, que es la que debe regir el análisis de las cuestiones que anteceden. Ello significa que no basta con una simple alegación, que ni siquiera se ha formulado en este caso, de que determinado tributo afecta el comercio extranjero. El contribuyente debe documentar en forma exhaustiva, con abundancia de estadísticas y otros datos, su alegación de que un impuesto específico afecta el comercio extranjero. *Moorman Mfg. Co.* v. *Bair*, 437 U.S. 267 (1978).

Esta última condición no se ha dado aquí. De todos modos, del análisis realizado en *Int'l Harvester Co.* puede concluirse que existe un nexo sustancial entre el Estado impositor y la actividad objeto de tributación y que el impuesto está adecuadamente relacionado con los servicios o beneficios que el Estado provee. La contribución que aquí se impugna no es de orden novedoso. Su utilización en la práctica internacional es muy conocida. S. Surrey, *United Nations Group of Experts and the Guidelines for Tax Treaties between Developed and Developing Countries*, 19 Harv. Int'l L.J. 1 (1978). Tampoco puede decirse que la contribución se ha distribuido injustamente —no se trata aquí de una contribución como la impuesta en *Mobil Oil Corp.* v. *Commissioner of Taxes*, 445 U.S. 425 (1980)— o que discrimina contra los bancos extranjeros. La desigualdad verdadera surgiría de eximirse a los bancos extranjeros no autorizados a hacer negocios en Puerto Rico de contribución sobre los intereses devengados por razón de préstamos cuyo importe ha de utilizarse aquí, mientras se exige a la vez que todos los otros bancos tributen.

Respecto a la exposición o riesgo de exposición a doble tributación, el récord es totalmente insuficiente para formar juicio sobre el particular, como también lo es para demostrar la necesidad de tratamiento federal uniforme.

Debe advertirse, no obstante, que en el tratado entre Estados Unidos y Japón para evitar la doble tributación, el gobierno de Estados Unidos no quiso afectar el poder impositivo de los estados en este género de situaciones. *Convention between the United States of America and Japan for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with respect to Taxes on Income*, 23 U.S.T. 969 (1971).

*Se revocará la sentencia recurrida.*

El Juez Asociado Señor Rebollo López no intervino.