Opinión disidente emitida por el
Juez Asociado Señor Rivera Pérez.
El 26 de enero de 2006 este Foro expidió un auto de certiorari para revisar una Sentencia dictada por el Tribunal de Apelaciones, mediante la cual determinó que Supermercados Amigo, Inc. no estaba exento de la obligación contributiva que le impone la Ley Núm. 95 de 29 de noviembre de 1992 (Ley Núm. 95), 5 L.P.R.A. see. 3001 et seq., a los importadores de carne de res. El foro intermedio apelativo resolvió que la Ley Núm. 95 era constitucional de su faz, ya que perseguía un fin gubernamental legítimo. Por estar igualmente dividido el Tribunal, se confirma la determinación del Tribunal de Apelaciones. Disentimos de este curso de acción. Consideramos que el caso ante nos es propicio para atender un tema que surge del caso y controversia, trabado ante el Tribunal de Primera Instancia. Nos referimos a la aplicación de la cláusula de comercio interestatal de la Constitución de Estados Unidos,(1) en su “estado durmiente”, a Puerto Rico. Asimismo, es de particular importancia analizar la base jurídica por la cual el “estado *461 durmiente” de la referida cláusula aplica a Puerto Rico. Por otra parte, resulta imperativo discutir los criterios establecidos por la jurisprudencia federal para determinar si una legislación local viola la cláusula de comercio interestatal de la Constitución federal, en su “estado durmiente”, y su aplicación a los hechos del caso de marras. Veamos.
I
El poder del Congreso de Estados Unidos para regular el comercio interestatal está plasmado en la See. 8 del Art. 1 de la Constitución de Estados Unidos. Esta facultad del Congreso federal ha sido objeto de múltiples interpretaciones por parte del Tribunal Supremo de Estados Unidos, así como por tribunales federales de inferior jerarquía, tratadistas y profesores de derecho constitucional.
Desde 1852, el Tribunal Supremo federal ha señalado que la cláusula de comercio interestatal de la Constitución de Estados Unidos contiene unas limitaciones implícitas al poder de acción de los estados, aun en ausencia de una expresión explícita del Congreso. Este poder implícito bajo la referida cláusula es el que se denomina “el estado durmiente” o “negativo” de la cláusula de comercio interestatal.(2)
El Alto Foro federal ha razonado que el propósito central del “estado durmiente” de la cláusula de comercio interestatal es promover la integración económica y prevenir la interferencia local con el flujo del comercio en la Nación.(3) Este razonamiento fue reiterado recientemente en American Trucking Assns., Inc. v. Michigan Pub. Serv. Comm’n, 545 U.S. 429 (2005), cuando el referido Foro ex-presó que el “estado durmiente” de la cláusula de comercio *462 interestatal previene que los estados pongan en peligro el bienestar económico de la Nación poniendo trabas al comercio.(4) En esta decisión se reafirmó la doctrina jurisprudencial que enuncia que los estados no pueden imponer contribuciones protectoras de industrias locales que, a su vez, tengan el efecto de discriminar contra industrias que operan en la esfera del comercio interestatal. Se reiteró que los estados no pueden imponer contribuciones que tienen el efecto inevitable de amenazar el tráfico comercial interestatal, mediante la creación de una “barrera financiera” alrededor del estado impositor.(5) Este Tribunal no ha analizado concretamente la aplicación del “estado durmiente” de la cláusula de comercio interestatal de la Constitución federal a Puerto Rico, ni la razón por la cual la misma es extensiva a nuestra jurisdicción.(6) No obstante, ciertas decisiones de este Foro han esbozado criterios cónsonos con los empleados por los tribunales federales para determinar si una legislación estatal viola la cláusula de comercio interestatal de la Constitución federal en su “estado durmiente”.(7)
*463 La Constitución de Puerto Rico dispone que el poder del Estado para imponer y cobrar contribuciones y autorizar su imposición se ejercerá según lo disponga la Asamblea Legislativa y nunca será rendido o suspendido.(8) No obstante, esta facultad impositiva se debe ejercer en armonía con lo que establece el Art. 3 de la Ley de Relaciones Federales con Puerto Rico, L.P.R.A., Tomo 1, See. 3, a los efectos de que no se hará distinción alguna entre artículos importados de Estados Unidos y los artículos similares producidos o manufacturados en Puerto Rico.(9)
En opiniones recientes, el Tribunal Federal de Apelaciones para el Primer Circuito ha expresado que el “estado durmiente” de la cláusula de comercio interestatal de la Constitución de Estados Unidos aplica a Puerto Rico de la misma forma que aplica a los estados de la Unión. Hace una década el referido foro expresó lo siguiente: “Although not a state, the Commonwealth of Puerto Rico is subject to the constraints of the Dormant Commerce Clause to the same degree as are the states.”(10) Recientemente, en Walgreen Co. v. Rullan, 405 F.3d 50 (1er Cir. 2005),(11) el referido foro judicial, atendiendo una controversia relativa al estatuto local que exigía certificados de necesidad a las personas que interesaran construir o adquirir establecimientos de cuidado de salud, incluso farmacias, determinó que la referida legislación violaba el “estado durmiente” de la cláusula de comercio interestatal de la Constitución de Estados Unidos. En consecuencia, determinó que la ley lo *464 cal era inconstitucional. En dicho caso, el Tribunal Federal de Apelaciones para el Primer Circuito de apelaciones puntualizó lo siguiente:
The Constitution grants Congress the power to regulate interstate commerce. While the Commerce Clause’s text provides only an affirmative grant of power, for over 150 years, the Clause has been interpreted to contain a negative aspect known as the dormant Commerce Clause. The dormant Commerce Clause doctrine, which applies to Puerto Rico on the same terms as it applies to the states, limits the power of states “to erect barriers against interstate trade’” .... (Citas omitidas y énfasis suplido.) Walgreen Co. v. Rullan, supra, pág. 55.
II
El Art. 3 de la Ley de Relaciones Federales con Puerto Rico, supra, en lo pertinente, dispone de la manera siguiente:
... las contribuciones de rentas internas que de acuerdo con la facultad concedida por esta ley imponga la Asamblea Legislativa de Puerto Rico, sobre cualesquiera artículos, efectos, mercaderías o mercancías podrá ser impuesta y cobrada sobre los artículos sujetos a dicha contribución, según determine la referida Asamblea Legislativa, tan pronto como los mismos hayan sido fabricados, vendidos, usados o importados en la Isla; Disponiéndose, que no se hará distinción alguna entre los artículos importados de los Estados Unidos o de países extranjeros y los artículos similares producidos o manufacturados en Puerto Rico. (Énfasis suplido.) L.P.R.A., Tomo 1, See. 3, ed. 1999, pág. 210.
Por otra parte, el Art. 38 de la Ley de Relaciones Federales con Puerto Rico, L.P.R.A., Tomo 1, See. 38, dispone que no aplicará a Puerto Rico legislación del Congreso alguna que regule el comercio interestatal.(12) Concluimos *465 que esta sección de la referida ley se refiere únicamente a la inaplicabilidad en Puerto Rico de la legislación aprobada por el Congreso de Estados Unidos sobre el comercio interestatal,(13) mas no a la inaplicabilidad en Puerto Rico del “estado durmiente” de la cláusula de comercio interestatal de la Constitución de los Estados Unidos.
En R.C.A. v. Gobierno de la Capital, 91 D.P.R. 416, 429-430 (1964), expresamos que la cláusula de comercio interestatal de la Constitución de Estados Unidos en su “estado durmiente” no aplica “ex propio vigore” a Puerto Rico. Manifestamos lo siguiente: “La contribución aquí en litigio, impuesta en virtud de ley de la Asamblea Legislativa de Puerto Rico, no es contraria a disposición alguna de la Constitución del Estado Libre Asociado. Si hubiera algún obstáculo legal para sostenerla habría que buscarlo en alguna disposición, o como consecuencia de alguna disposición, de la Ley de Relaciones Federales.” (Énfasis suplido.)
Se colige de lo anterior que la prohibición que impide que Puerto Rico discrimine contra productos importados de los referidos estados surge de la voluntad legislativa del Congreso de Estados Unidos y no por la aplicación “ex propio vigore” de la cláusula de comercio interestatal de la Constitución federal en su “estado durmiente”.
*466 En Examining Board v. Flores de Otero, 426 U.S. 572 (1976), el Tribunal Supremo de Estados Unidos expresó que cuando el Congreso federal aprobó la Constitución de Puerto Rico añadió, entre otras cosas, una condición para que cualquier enmienda o revisión fuera consecuente con las disposiciones de la Constitución de Estados Unidos.(14) El Alto Foro federal expresó que el propósito de la condición no era otro que dejar establecido lo siguiente:
“Applicable provisions of the United States Constitution and the Federal Relations Act will have the same effect as the Constitution of the United States has with respect to State constitutions or State Laws.” (Enfasis suplido.) Examining Board, supra, pág. 593 esc. 25.
Se deduce de lo anterior que la voluntad legislativa del Congreso de Estados Unidos tiene en Puerto Rico el mismo efecto que la Constitución federal tiene sobre la Constitución de los estados de la Unión. De acuerdo con tal voluntad legislativa, plasmada en la See. 3 de la Ley de Relaciones Federales con Puerto Rico, supra, es que Puerto Rico no puede discriminar contra productos importados de los estados de la Unión. En Examining Board, supra, pág. 594, el Alto Foro federal expresó lo siguiente: “the purpose of Congress in the 1950 and 1952 legislation was to accord to Puerto Rico the degree of autonomy and independence normally associated with States of the Union ...”
La decisión R. C.A. v. Gobierno de la Capital, supra, mediante la cual se resolvió hace algo más de cuatro décadas que el poder de tributación de Puerto Rico, en cuanto al comercio interestatal, le permite hacer cosas que no le son *467 permitidas a los estados, no se sostiene actualmente ante el desarrollo del ordenamiento jurídico en los tribunales, a nivel federal, y por opiniones de tratadistas de derecho constitucional.(15)
Concluimos que la cláusula de comercio interestatal de la Constitución de Estados Unidosen su “estado durmiente” aplica a Puerto Rico. No obstante, tal aplicación no surge “ex propio vigore” de la Constitución de Estados Undios, la cual no opera de esa forma en nuestra jurisdicción. La prohibición de discriminar contra el comercio interestatal aplica a Puerto Rico por voluntad del Congreso de Estados Unidos mediante la See. 3 de la Ley de Relaciones Federales con Puerto Rico, que hace aplicable en nuestra jurisdicción la cláusula de comercio interestatal de la Constitución federal en su “estado durmiente”.(16) De esta forma se le imprime sentido a la realidad y circunstancias particulares de Puerto Rico, de acuerdo con la voluntad del Congreso de Estados Unidos de otorgarle el mismo grado de autonomía e independencia normalmente asociada con los estados de la Unión.
*468 III
Procede discutir ahora los criterios aplicables para determinar si una legislación estatal viola la cláusula de comercio interestatal de la Constitución de Estados Unidos en su “estado durmiente”.
El Tribunal Supremo federal ha desarrollado una doctrina —test— para determinar si un impuesto estatal es válido ante un ataque bajo el “estado durmiente” de la cláusula de comercio interestatal de la Constitución de Estados Unidos.(17) Así, una ley estatal será válida si: (1) existe un nexo sustancial entre la actividad sujeta a la contribución y el estado que la impone; (2) la contribución está distribuida o proporcionada equitativamente; (3) la contribución en cuestión no discrimina contra el comercio interestatal, y (4) la contribución está relacionada apropiadamente con los servicios provistos por el estado.(18)
Según comenta el profesor Tribe, este análisis responde a unos requisitos del debido proceso de ley que exige que entre el estado impositor y las actividades del contribuyente exista, al menos, una “mínima conexión”. De igual manera, Tribe sostiene que el tercer criterio —que la contribución en cuestión no discrimine contra el comercio interestatal— es el más importante al momento de determinar la validez de una legislación estatal, vis-á-vis el poder del Congreso federal de regular el comercio entre los estados al amparo de la cláusula de comercio interestatal de la Constitución federal.(19)
*469 Con el beneficio de la discusión que antecede, procedemos a discutir si la Ley Núm. 95, supra, mediante la cual se impuso urna obligación contributiva a los importadores de carne de res, es válida desde una perspectiva constitucional de acuerdo con la cláusula de comercio interestatal de la Constitución de Estados Unidos e su “estado durmiente”. Veamos.
IV
El esquema establecido en la Ley Núm. 95, supra, viola la cláusula de comercio interestatal en su “estado durmiente”. Dicha legislación tuvo el propósito de crear una campaña publicitaria genérica para promover el con-sumo de la carne de res producida en Puerto Rico. No obstante, la referida publicidad tuvo como meta crear conciencia de que existe una alternativa real en la carne de res producida en Puerto Rico; fomentar el consumo de carne de res producida en la isla; crear reconocimiento del nombre; demostrar frescura y calidad del producto local. Asimismo, se realizó una campaña publicitaria en prensa escrita y radio que se dedicó a resaltar los atributos de frescura y calidad que contiene la “Carne de Res del País”. El elemento de frescura de la carne producida en Puerto Rico fue el criterio más importante de la campaña publicitaria realizada con los recaudos de un Fondo establecido por la Ley. Núm. 95, supra, al cual tenían que aportar los importadores de carne de res. Todos los anuncios publicados llevaban el eslogan “Carne Fresca del País”.
El propósito central de la campaña genérica era beneficiar únicamente el consumo de carne de res del país y no la carne importada. La referida campaña perjudicaba el mercado de la carne de res importada.
*470 Siguiendo el tercer criterio del test establecido por la jurisprudencia federal, para determinar si un estatuto infringe el “estado durmiente” de la cláusula de comercio interestatal de la Constitución federal resulta forzoso concluir que la Ley Núm. 95, supra, que le impuso una obligación contributiva a los importadores de carne de res para fomentar el consumo de carne producida en Puerto Rico, tuvo el efecto de discriminar contra la carne de res importada, a la vez que beneficiaba a la industria local.
En consecuencia, la obligación contributiva, impuesta por la Ley Núm. 95, supra, destinada a beneficiar únicamente a la carne del país, incumple el tercer requisito del “test” esbozado por la jurisprudencia federal.(20)
Concluimos que la referida ley es inconstitucional por violar la cláusula de comercio interestatal, APLICABLE A Puerto Rico, de la Constitución de Estados Unidos en su “estado durmiente”.
V
Por los fundamentos antes expuestos, disentimos de la Sentencia dictada por este Tribunal que confirma la Sentencia recurrida, emitida por el Tribunal de Apelaciones. Revocaríamos la misma.

 Art. 1, Sec. 8, Const. EE. UU., L.P.R.A., Tomo 1.

 Cooley v. Board of Wardens of Port of Philadelphia et al., 53 U.S. 298 (1852), según citado y analizado en L.H. Tribe, American Constitutional Law, 3ra ed., Nueva York, Ed. Foundation Press, 2000, pág. 1030.

 Hood & Sons v. Du Mond, 336 U.S. 525, 537-538 (1949).

 En este caso, el Tribunal Supremo federal expresó lo siguiente: “Our Constitution ‘was framed upon the theory that the peoples of the several states must sink or swim together.’ Thus, this Court has consistently held that the Constitution’s express grant to Congress of the power to ‘regulate Commerce ... among the several States’ contains a ‘further, negative command, known as the dormant Commerce Clause,’ that ‘create[s] an area of trade free from interference by the States’ ....” (Citas omitidas.) Am.. Trucking Ass’ns v. Mich. PSC, supra, pág. 433.

 American Trucking Assns., Inc. v. Scheiner, 483 U.S. 266, 284 (1987).

 En M. & B.S., Inc. v. Depto. de Agricultura, 118 D.P.R. 319 (1987), nos ex-presamos de la manera siguiente: “Es innecesario resolver en este caso si la Cláusula de Comercio Interestatal de la Constitución Federal, ...en su estado durmiente aplica a Puerto Rico .... Sin embargo, aun si aplicásemos la normativa federal sobre la Cláusula de Comercio, la reglamentación en controversia es válida.” (Énfasis suplido.) Asimismo, en Iberia v. Srio. de Hacienda, 135 D.P.R. 57, 72 esc. 11 (1993), nos expresamos de la manera siguiente: “Dado que el análisis señalado no aplica al presente caso, es innecesario pronunciarnos sobre la aplicabilidad de la Cláusula de Comercio [en su ‘estado durmiente’], al Estado Libre Asociado de Puerto Rico.” (Énfasis suplido.)

 Gómez Hnos. v. Srio. de Hacienda, 114 D.P.R. 367 (1983); Banco Popular v. Mun. de Mayagüez, 126 D.P.R. 653 (1990). En este último caso expresamos que, bajo los criterios de la cláusula de comercio interestatal, una ley de patentes municipales de Puerto Rico podía ser inconstitucional. Sostuvimos que al reconocer un crédito se “aseguraba la constitucionalidad de nuestra Ley de Patentes Municipales ante un *463 ataque de acuerdo con la cláusula de comercio interestatal”. (Énfasis suplido.) Banco Popular v. Mun. de Mayagüez, supra, pág. 661.

 La facultad impositiva del Estado es amplia y abarcadora, según hemos resuelto en Café Rico, Inc. v. Mun. de Mayagüez, 155 D.P.R. 548 (2001), y en Continental Ins. Co. v. Srio. de Hacienda, 154 D.P.R. 146 (2001).

 Art. I, Sec. 3, Const. E.L.A., L.P.R.A., Tomo 1.

 United Egg Producers v. Department of Agriculture, 77 F.3d 567 (1er Cir. 1996). La aplicación de la cláusula de comercio a Puerto Rico fue posteriormente reiterada en Starlight Sugar, Inc. v. Soto, 253 F.3d 137 (1er Cir. 2001).

 Esta decisión fue recurrida, mediante Petición de certiorari, ante el Tribunal Supremo federal. El Más Alto foro federal denegó la expedición del recurso. Perez Perdomo v. Walgreen Co., 126 S.Ct. 1059, 163 L.Ed. 2d 928 (2006).

 En Sea-Land Services, Inc. v. Municipality of San Juan, 505 F. Supp. 533, 545 (1980), el tribunal expresó lo siguiente:
*465 “Finally, we see no reason to conclude that the constitutional policy of prevention of adverse interference of state legislation upon interstate commerce should not apply to Puerto Rico. We have found no indication that Congress intended otherwise. Nor can we infer, as did the local Supreme Court in RCA v. Government of the Capital ... that the exemption from, inter alia, the Interstate Commerce Act contained in the Federal Relations Act meant anything more than that.” (Énfasis suplido y citas omitidas.) Véase D.M. Helfeld en How Much of the Federal Constitution is Likely to be held Applicable to the Commonwealth of Puerto Rico? XXXIX (Núm. 2) Rev. Jur. U.P.R. 169 (1970).

 Esta ley es la Interstate Commerce Act de 1887. En R.C.A. v. Gobierno de la Capital, 91 D.P.R. 416, 431 (1964), expresamos lo siguiente: “Es otro hecho histórico que la disposición constitucional que reserva al Congreso el poder de reglamentar el comercio con naciones extranjeras, entre los Estados y con las tribus indias, no sólo no ha regido ni rige por su propia fuerza en Puerto Rico sino que por el contrario, el Congreso dispuso de manera expresa que no serían aplicables a Puerto Rico la Ley sobre Comercio Interestatal y las varias enmiendas [que se hicieron.] a ella ...” (Énfasis suplido.)

 La Resolución Conjunta aprobando la Constitución del Estado Libre Asociado de Puerto Rico dispone, en lo pertinente, de la manera siguiente:
“ ‘Cualquier enmienda o revisión de esta Constitución deberá ser compatible con la resolución decretada por el Congreso de los Estados Unidos aprobando esta Constitución, con las disposiciones aplicables de la Constitución de los Estados Unidos, con la Ley de Relaciones Federales (Enfasis suplido.) Ley Pública Núm. 447, 82do, 66 Stat. 327, Documentos Históricos, L.P.R.A., Tomo 1, ed. 1999, pág. 148.

 En Starlight Sugar, Inc. v. Soto, supra, el Tribunal Federal de Apelaciones para el Primer Circuito expresó que la decisión en R.C.A. v. Gobierno de la Capital, supra, de 1964 fue un pronunciamiento “amorfo” que eludió interpretar cómo aplica en Puerto Rico la cláusula de comercio interestatal de la Constitución federal. Asimismo, el referido foro expresó que parte de la decisión se fundamentó en Buscaglia v. Ballester, 162 F.2d 805 (1er Cir. 1947), que fue posteriormente revocado en Trailer Marine Transport Corp. v. Rivera Vazquez, 977 F.2d 1 (1er Cir. 1992). El Profesor Helfeld, analizando la decisión de este Foro en R.C.A., expresó lo siguiente: “The Supreme Court of Puerto Rico has suggested in a dictum that the commerce clause may be inapplicable as a restraint on Commonwealth legislation, but would the Supreme Court of the United States agree? In my judgment the soundest prediction is that it would probably not.” Helfeld, supra, págs. 189-190. Además, expresó lo siguiente: “It is essential to keep in mind the distinction between Congress authorizing Puerto Rico to discriminate and Puerto Rico discriminating on its own initiative.” Helfeld, supra, pág. 190 esc. 55.

 Mediante el Art. 3 de la Ley de Relaciones Federales con Puerto Rico, L.P.R.A., Tomo 1, Sec. 3, el Congreso federal, por la vía estatutaria, prohibió que Puerto Rico discriminara contra productos importados de Estados Unidos.

 Este análisis se emplea para determinar si una ley estatal viola la cláusula de comercio interestatal, en su “estado durmiente”, de la Constitución federal.

 Wardair Canada v. Florida Dept. of Revenue, 477 U.S. 1 (1986), citado en Iberia v. Srio. de Hacienda, supra. Conviene resaltar que en el caso Wardair se particulariza que este test aplica en aquellos casos donde se analiza una violación a la cláusula de comercio interestatal, en su “estado durmiente”, de la Constitución federal.

 'i'ñke, op. cit, pág. 1106. El profesor Tribe fundamenta esta contención en dos casos resueltos por el Tribunal Supremo federal: Oregon Waste Systems, Inc. v. Department of Env. Quality of Ore., 511 U.S. 93 (1994), y Chemical Waste Management, Inc. v. Hunt, 504 U.S. 334 (1992). Conviene puntualizar que el test empleado *469 en ambos casos se hizo bajo el análisis de la cláusula de comercio interestatal de la Constitución de Estados Unidos en su “estado durmiente”.

 El tercer requisito —que la contribución en cuestión no discrimina contra el comercio interestatal— se ha analizado de acuerdo con el enfoque tradicional que se emplea cuando se impugna una legislación estatal por alegadamente violar la cláusula de comercio interestatal de la Constitución federal en su “estado durmiente”. Tribe, op. cit., pág. 1106. En consecuencia, una ley estatal que discrimina contra el comercio interestatal, ya sea de su faz o por su aplicación, es virtualmente inválida o inválida per se. Philadelphia v. New Jersey, 437 U.S. 617 (1978); Brown-Forman Distillers v. N.Y. Liquor Auth., 476 U.S. 573 (1986).